(LOCAL LAW.)

## Johnson v. Pannel's heirs.

It is essential to the validity of an entry, that the land intended to be appropriated should be so described as to give notice of the appropriation to subsequent locators.

In taking the distance from one point to another on a large river, the measurement is to be with its meanders, and not in a direct line.

In ascertaining a place to be found by its distance from another place, the vague words "about" or "nearly" and the like, are to be rejected, if there are no other words rendering it necessary to retain them: and the distance mentioned is to be taken positively.

Entries made in a wilderness, most generally referring to some prominent and notorious natural object, which may direct the attention to the neighbourhood in which the land is placed, and then to some particular object exactly describing it; the first of these is denominated the general or *descriptive call*, and the last the particular or *locative call* of the entry. Reasonable certainty is required in both: if the *descriptive call* will not inform a subsequent locator in what neighbourhood he is to search for the land, the entry is de-

fective, unless the particular object is one of sufficient notoriety. If, after having reached the neighbourhood, the locative object cannot be found within the limits of the *descriptive calls*, the entry is also defective. A single *call* may, at the same time, be of such a nature (as, for example, a *spring* of general notoriety) as to constitute within itself both a *call of description and of location;* but, if this *call* be accompanied with another, such as a *marked tree at the spring*, it seems to be required that both should be satisfied.

The *call* for an unmarked tree of a kind which is common in the neighbourhood of a place sufficiently described by the other parts of the entry to be fixed with certainty may be considered as an *immaterial call.*

Therefore, where the entry was in the following words, " D. P. enters 2,000 acres on a treasury warrant on the Ohio, about twelve miles below the mouth of Licking, beginning at a hiccory and sugar tree on the river bank, running up the river from thence 1,060 poles, thence at right angles to the same, and back for quantity," it was held that the *call* for a sugar tree might be declared immaterial, and the location be sustained on the other *calls.*

The entry was decreed to be surveyed, beginning 12 miles below the mouth of Licking on the bank of the Ohio, and running up that river 1,060 poles; which line was to form the base of a rectangular parallelogram to include 2,000 acres of land.

THIS cause was argued by Mr. *Talbot,* for the appellants, and Mr. *M. B. Hardin,* for the respondents.

Mr. Chief Justice MARSHALL delivered the opinion of the court.

This case depends on the validity and construction of an entry made in the state of Kentucky by David Pannel, the ancestor of the appellees, in these words: " David Pannel enters 2,000 acres on a treasury warrant on the Ohio, about twelve miles below the mouth of Licking, beginning at a hiccory and sugar tree on the river bank, running up the

1817.

Johnson
v.
Pannel's
heirs.

Feb. 25th

March 6th.

river from thence 1,060 poles, thence at right angles to the same and back for quantity."

The appellant having obtained an elder patent for the same land on a junior entry, the appellees brought a bill in the circuit court for the district of Kentucky, sitting in chancery, praying that the defendant, in that court, might be decreed to convey to them. The circuit court directed the entry of the complainant to be surveyed, beginning twelve miles below the mouth of Licking, on the bank of the Ohio, and running up that river 1,060 poles; which line was to form the base of a rectangular parallelogram, to include 2,000 acres of land. So much of this land as was within Pannell's patent, and also within Johnson's patent, the court decreed the defendant to convey to the plaintiffs. From this decree the defendant has appealed to this court.

He contends that the decree is erroneous, because,

1st. It affirms the validity of this entry, which is too uncertain and defective to be established.

2d. If the entry be established, it ought to be so surveyed that the whole land should lie twelve miles below the mouth of Licking.

First. It is undoubtedly essential to the validity of an entry, that it shall be made so specially and precisely that others may be enabled, with certainty, to locate the adjacent *residuum*. The land intended to be appropriated, must consequently be so described as to give notice of the appropriation to subsequent locaters. In obtaining this information, however, it would seem to be the plain dictate of common sense, that the person about to take up adjoin-

ing lands, would read the whole of a previous entry which he wished to avoid, compare together its different parts, and judge, from the entire description, what land was appropriated. If with common attention, and common intelligence, the land could be ascertained and avoided, the requisites of the law would seem to be complied with.

Test Pannel's entry by this standard.

The mouth of Licking is a place of acknowledged and universal notoriety, which no man in the country could be at a loss to find. When placed there, he is informed by the entry that Pannel's land lies twelve miles below him on the Ohio. He proceeds down the river twelve miles, and is there informed that the entry begins at a hiccory and sugar tree on the river bank. He looks around him and sees hiccory and sugar trees. Here, then, he would say, while uninformed of decisions which have since been made, is the beginning of the entry. In what direction does the land lie? The paper which is to give his information says, " running up the river from thence 1060 poles, thence at right angles to the same, and back, for quantity." Would he say this description is repugnant in itself, containing equal and contradictory directions, neither of which is entitled to any preference over the other, and leaving the judgment in such a state of doubt and perplexity as to be incapable of deciding the real position of this land? Would he say the whole land must lie twelve miles from the mouth of Licking? This is so clearly and definitely required, that the entry will admit of no other construction? That the sub-

sequent words directing him to run up the river from that point 1,960 poles, and thus approach the mouth of Licking, are not explanatory but contradictory? That the one or the other must be totally discarded? Were this the real impression which would be made on the mind, it cannot be denied that the state of uncertainty in which these equal and irreconcilable descriptions would place a subsequent locator, ought to vitiate the entry. But if, on the contrary, the obvious and natural construction would be that; since every part of the land cannot be placed precisely twelve miles below the mouth of Licking, the distance is applicable to any part of the tract, and this part of the description may be so explained and controlled by other parts, as to receive a meaning different from that which it would have if standing alone; then the subsequent locator would take the whole description together, and if its different parts could, without difficulty, be reconciled, he would reconcile them. He would say the beginning must be twelve miles from the mouth of Licking, but the residue of the land must approach that place because the entry requires positively to run from the beginning up the river. This would, it is thought, be the manner in which this entry would be understood by a person guided by no other light than is furnished by human reason. But the courts of Kentucky have constructed a vast and complex system, on the entire preservation of which their property depends, and this court will respect that system as much as the courts of Kentucky themselves.

1817.

Johnson
v.
Pannel's
heirs.

In applying the decisions of that country to this cause, we find many points now settled which were formerly controverted questions. In taking the distance from one point to another on a large river, the measurement is to be with its meanders, not in a direct line. And in ascertaining a place to be found by its distance from another place, the vague words " *about*," or " *nearly*," and the like, are to be discarded, if there are no other words rendering it necessary to retain them; and the distance mentioned is to be taken positively. A subsequent locator, then, must look for the beginning called for in this entry twelve miles below the mouth of Licking, measured by the meanders of the Ohio.

In construing locations some other principles have been established which seem to be considered as fundamental. Entries made in a wilderness would most generally refer to some prominent and notorious object which might direct the attention to the neighbourhood in which the land was placed; and then to some particular object which should exactly describe it. The first of these has been denominated the general or *descriptive call*, and the last the particular or *locative call*, of the entry. Reasonable certainty has always been required in both. If the *descriptive call* will not inform a subsequent locator in what neighbourhood he is to search for the land, the entry is defective, unless the particular object be one of sufficient notoriety. If, after having reached the neighbourhood, the locative object cannot be found within the limits of the descriptive call, the entry is equally defective. They must

both be found, and neither can be discarded unless deemed immaterial. A single call may be, at the same time, so notorious and so formed, as, for example, a spring of general notoriety, as to constitute in itself a call both of description and location; but if this call be accompanied with another, as a marked tree at the spring, it seems to be required that both calls should be satisfied.

Thus, in the case now under the consideration of the court, the call for a beginning twelve miles below the mouth of Licking would be sufficiently descriptive, and is sufficiently precise to be locative. It would be unquestionably good, were it not accompanied with the additional call for a hiccory and sugar tree. Whether it is vitiated by this additional call, is to be determined by a reference to the decisions in Kentucky.

The case of *Grubbs et. al. v. Rice,* (2 Bibb, 107.) depended on the validity of an entry made in these words: "James Thomas enters 300 acres of land, &c., on the south side of Kentucky, about two miles below the mouth of Red River, beginning at a tree marked I. S. on the bank of the river, and running down the river for quantity."

No tree marked I. S. was found at or near the distance required. It was proved that a tree had been marked I. S. by the person who afterwards made the entry for Thomas, and that it stood on the south side of Kentucky; but instead of being two miles it was three miles and a quarter, by the meanders of the river, and two miles and two-thirds of a mile on direct course, below the mouth of Red River,

The inferior court disregarded the call for the tree, and fixed the beginning of the entry at the termination of two miles below the mouth of Red River. On an appeal this decree was reversed, and Judge Wallace, in delivering the opinion of the court, said, "This rejection of the call for the tree marked I. S. is certainly subversive of the well-established principle, that no part of an entry ought to be rejected, unless what is evidently mere surplusage, or absolutely repugnant to other expressions which are more important; because to do more would not be construing entries, but making them. But the expression 'about two miles below the mouth of Red River,' is obviously only a general call, and to substitute this in the place of the expression 'beginning at a tree marked I. S., &c.,' which is the only special or locative call in the entry, is still more inadmissible."

The case of *Kincaid* v. *Blythe and others*, (2 Bibb, 479.) turned on the validity of an entry made "on a branch of Silver Creek, about four miles from the little fort on Boone's old trace, including a tree marked D. B." In this case too the inferior court disregarded the call for the tree, which could not be proved to have existed when the location was made, and directed the land to be surveyed at the termination of the distance of four miles from the little Fort. On appeal, this decree also was reversed, and, in delivering the opinion of the court, Judge Wallace said, "It is evident that when the entry was made, Boone's old trace, the little Fort, and Silver Creek, were all well known by those names to the generality of those who were conversant in

the vicinity. And it further appears, that about four miles from the little Fort, on a southern direction, Boone's old trace struck Hayes' fork of Silver Creek, which may be presumed to be the branch of Silver Creek intended; and, if the entry contained no other calls, it would deserve serious consideration whether the place where the trace crossed Hayes' fork of Silver Creek ought not to be assumed as the centre of the survey to be made thereon. But this entry calls to include a tree marked D. B., which is obviously a locative and material call, and, therefore, conformably to the uniform decisions of this court on similar entries, must be taken into consideration in deciding on this entry."

These cases are admitted to have settled the law to be that a material locative call, as for a marked tree, cannot be disregarded; and that, if the existence of the tree cannot be proved, the entry cannot be sustained. The only distinction between these cases and that under the consideration of the court is that, in them, the entries call for a *marked tree;* in this it calls for a *sugar tree and hiccory*, not stating them to be marked. For the importance of this distinction we are again referred to the decisions of Kentucky.

The case of *Greenup* v. *Lyn's heirs*, turned on an entry of land " lying on Kentucky river, opposite to Leesburg, beginning at a beach tree and running up the river and back, for quantity." The validity of this entry was affirmed in the inferior court, and, on an appeal, was also affirmed in the superior court.

In delivering the opinion of the superior court, Judge Logan said, "Had the only call in the entry been to lie on the river opposite to Leesburg, we should have concurred with the circuit court in the manner of surveying it, by running up and down the river equal distances from a point opposite the centre of Leesburg; and if the call to begin at "a Beach Tree" had been the only other call, we should still have thought that opinion correct, as the common growth of the timber there is beech, and a tree of the description could have been had at almost any point within the limits of the claim. This circumstance, we conceive, ought not to affect the entry; for whether the call is regarded or rejected, in the construction of the entry, is totally immaterial; because, it seems to the court that where an uncertainty arises from the number of objects presented, answering the calls of an entry, and it has other calls sufficiently precise to sustain it, that, of the many doubtful objects, that should be taken as intended, which will best preserve the consistency of the others; and in this case it seems the call for the tree could be complied with without changing in the least the position given by the first call, so that it is left as an immaterial call. We are more confirmed in this opinion when we consider that the entry, from any other view, must be invalid for uncertainty, although we believe no one could doubt, from a liberal and just construction of it, as to the general body and position of the land it calls for."

1817.

Johnson
v.
Pannel's
heirs.

This case, if not overruled, certainly goes far in distinguishing between a call for a marked tree, and for a tree not marked; provided such trees as the call requires, are found about the place where the entry must begin. It goes further, and strongly indicates the opinion that an unmarked tree was an object of less importance in the mind of the locator than one selected from all others by a mark peculiar to itself. While the latter must have been deemed important, and have strongly fixed his attention, the former may have been thought not very essential. Coming to the place where he intended to begin, looking around him when there, and seeing trees of a particular kind from the common growth, he might suppose it unimportant at which of these trees he should commence and call for one of them. In such a case, a court may well say "whether the call is regarded or rejected in the construction of the entry is totally immaterial." There is much reason for this opinion. Certainty is required in entries for the purpose of giving notice to subsequent locators. The subsequent locator who comes to the place described in the entry, in order to find the land he wishes to avoid, will, if a marked tree be called for, search for that marked tree; and, if it cannot be found, may well conclude that this is not the land intended to be appropriated; but if only a tree is called for, and trees stand all around him, he will naturally suppose that the nearest may be taken as a beginning; and that to him it is quite immaterial whether the commencement be at the spot on which he stands, or within ten feet or ten yards of him.

The subsequent locator is not misled by this call; nor is there any danger of his mistaking the position of the land. It is not without reason, therefore, that the call is pronounced immaterial, and one which may be regarded or rejected. The entry may be sustained by other calls which are sufficiently precise to sustain it.

If in the case at bar it had been proved that sugar trees and hiccories were as common at the termination of twelve miles from the mouth of Licking, as the beech tree opposite to Leesburg, the two cases would, in this respect, be precisely alike. But this is not proved. Only one witness has been examined to this point, and his testimony is that there are sugar trees on the bank of the Ohio, in the neighbourhood; and that the maple or sugar tree might be found for many miles above and below the corner, standing within fifty yards of each other, on the second bank of the river. The report of the surveyor shows that three elms and a hiccory stood at the termination of the twelve miles from the mouth of Licking.

There would certainly be much difficulty in supporting this as a locative call, although it is not absolutely certain that it might not be so supported. The not less important question is, whether it may be considered as an immaterial call. No case has been cited in which the call for an unmarked tree has been thought material; and there are cases in which a circumstance not important in itself, has been dispensed with. The difference between calling for a marked and an unmarked tree has been

already noticed.   It is difficult to suppose that they are viewed as equally important by the person making the entry, or by a subsequent locator.   If the person making the entry designed to select for the beginning a particular tree, in exclusion of all others, it is in a high degree improbable that he should omit to mark it.   If he made the entry from memory, then the place only, and not the particular tree, would be the object to which his mind would attach importance.   So with the subsequent locator. The distance would bring him to the place, or sufficiently near to it for every beneficial purpose, and whether a sugar tree and hiccory stood at the end of twelve miles as measured by his chain, or within thirty, forty, or fifty yards, would not essentially vary his views with respect to adjacent lands.   He could not doubt, to use the expression of the court in the case of Greenup v. Lyne's heirs, "as to the general body and position of the land" described in the entry.   The opinion that the call for an unmarked tree of a kind which is common in the neighbourhood of a place sufficiently described by other parts of the entry to be fixed with certainty, may be considered as an immaterial call, is supported by the decision of the court in the case which has been last mentioned.   Although in that case the judge shows that a tree might be found to satisfy the call at the place fixed as the beginning, yet it is apparent that different places within a few yards of each other would answer equally well for the beginning, and that different trees might be selected for that purpose.   And the judge, after stating that this call

might either be considered as satisfied, or in itself immaterial, proceeds to show that he thought it immaterial. "Regarding," he proceeds to say, " the call for a beech tree as immaterial, we come to consider," &c.

Upon the authority of the case of Greenup v. Lyne's heirs, then, and upon a view of the whole of this entry, it would seem that the call for the sugar tree and hiccory may be declared immaterial, and the location be sustained on its other calls.

The second question is, in what manner ought this entry to be surveyed?

It is admitted to be a general principle that, where a location calls for land to lie a given distance from a given point, the whole land must be placed at or beyond that distance, if there be no other words in the location which control this construction. But it is not admitted that this call can overrule the plain meaning of the whole entry taken together. It is believed to be unquestionably decided that every material part of the entry is to be considered, and that such construction is to be put upon the whole as is best adapted to all its material calls.

This principle was laid down in Greenup v. Lyne's heirs, which, on this point, bears a strong analogy to that under the consideration of the court. In Greenup v. Lyne's heirs, the entry called for land "lying on Kentucky river, opposite to Leesburg, beginning at a beech tree, and running up the river and back for quantity."

It is perfectly settled in Kentucky, that on a call for land lying opposite to Leesburg, the centre of the

land would be placed opposite to the centre of the town, and a square would be formed on a base line running up and down the river, to include the quantity. The entry could not otherwise be sustained. The inferior court laid off this entry in that manner; and the appellate court declared that it would be the proper manner, were there not other words in it which controlled this general description by one which was more particular. That more particular description was "running up the river and back for quantity."

These cases are in principle the same. The one calls for land twelve miles below the mouth of Licking, which description would require land the nearest part of which is at the given distance; the other calls for land lying opposite Leesburg, which requires a tract the centre of which is opposite to the centre of the town. The one calls for a beginning at a sugar tree and hiccory, without naming a place for the beginning otherwise than by the description of the position of the land; the other calls for a beech tree under precisely the same circumstances. In the case of Greenup v. Lyne's heirs, the words "running up the river and back for quantity" have changed the place of beginning from the centre to the lower end of the town, and the position of the land, so that instead of lying above and below Leesburg, in equal quantities, it lies entirely above that place. Why shall not the same words influence in the same manner, the position of Pannel's land?

From the language of Pannel's entry, every man would expect the survey to begin at the place called

for, twelve miles below the mouth of Licking. If that is not the beginning the location is unquestionably uncertain and void. If that is the beginning it is the plain mandate of the entry to run up the river 1,060 poles and back for quantity.

It is the opinion of the majority of the court that the decree ought to be affirmed, with costs.