THE NORTH CHICAGO STREET RAILROAD COMPANY

*v.*

LAMBERT KASPERS.

*Opinion filed June 21, 1900.*

1. EVIDENCE—*what competent in action against street railroad company for negligence.* In an action for injury to plaintiff by being thrown from a moving street car which he was in the act of boarding, it is competent, as bearing upon the question of negligence, to show that other passengers got upon moving cars at this place, and that the defendant, through its conductors, permitted them to do so without objection, and even encouraged the practice.

2. INSTRUCTIONS—*when instruction by court of its own motion is not erroneous.* An instruction by the court, of its own motion, that it is solely for the jury to determine the facts from the evidence, and, having done so, to then apply to them the law as stated in the instructions, considered as a whole, is not subject to the objection that it gave the jury to understand that they were above the law.

*North Chicago St. Railroad Co.* v. *Kaspers*, 85 Ill. App. 316, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. PHILIP STEIN, Judge, presiding.

JOHN A. ROSE, and LOUIS BOISOT, Jr., (W. W. GURLEY, of counsel,) for appellant.

FRANCIS J. WOOLLEY, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On December 31, 1896, the appellee, Lambert Kaspers, who was then fourteen years of age, was employed as a cash boy at the store of Marshall Field & Co., in Chicago, earning three dollars a week. He lived on Wolfram street, and was required to be at the store at eight o'clock. On the morning of that day he took one of appellant's Lincoln avenue electric cars at the corner of Herndon,

George and Lincoln avenues and became a passenger on appellant's street railway to the business part of the city, near the place of his employment. He paid his fare and received a transfer ticket enabling him to ride from the end of the electric line on appellant's cable car line the rest of the distance. He was carried to the end of the electric line at the corner of Lincoln, Wrightwood and Sheffield avenues, and when he got off the car he saw a train of four cars, consisting of a grip-car and three passenger cars, standing on Sheffield avenue ready to start. He walked toward it and when about twenty feet behind it it started. He ran up to the train and ran alongside of it past three cars and attempted to climb on the front platform of the first car. He had got on the step at the front end of the car and was stepping up on the front platform when the speed of the train was increased and he fell off, with the result that he received a fracture of the bones of the left leg above the ankle. He brought this suit to recover damages for his injury, alleging that he was in the exercise of ordinary care, and that he was injured by appellant's negligence in causing the train to be violently jerked and accelerated in speed, by means of which he was thrown to the ground. He recovered a judgment for $5000 in the trial court, which was affirmed by the Appellate Court. The errors relied on for reversal are, first, the admission of evidence as to the conduct of conductors and passengers upon other trains at times previous to this accident; and second, the giving of the instruction numbered 31.

The evidence established the following facts concerning the management of trains at the place of the accident: The cable cars start for down town from that corner every four minutes. The trains of cars come out of the car barns by means of a cable that runs through the barn and the cars run upon what is called the "stand" and load in their passengers. The speed of this barn cable is about four and a half miles an hour. There is a

separate cable which conveys the cars down town, and there is a vault about twenty feet long between the two. There is no rope in the vault and the cars cross it by the momentum communicated to the train by the barn cable, and the down town cable is picked up on the other side. When the trains start from the stand the gripman lets go of the barn cable about fifteen feet north of the vault. The cars then run by their own momentum about fifty feet across the vault to about fifteen feet south of it, where the down town cable is picked up. Where the gripman takes hold of the new cable is called the "pick up," and the speed of that cable is nine miles an hour. It was at this place, where the gripman took hold of the new cable, that the train started at a faster rate and the plaintiff fell off.

The evidence admitted over the objection of defendant was, that at the place where plaintiff ran along the train and tried to get on the car, passengers frequently ran and jumped on as the train was moving slowly, and that conductors received passengers in that way and encouraged the practice, telling them to come on and aiding them to get on. There was no claim of any willful injury to the plaintiff, and he was required to prove that he was in the exercise of ordinary care for his own safety. But it is not negligence *per se* and as matter of law for a passenger to get on a street car when it is in motion. Whether he was guilty of negligence in doing so is a question of fact depending upon the rate of speed of the car and other circumstances. (*North Chicago Street Railroad Co.* v. *Wiswell,* 168 Ill. 613.) That question has been settled by the judgment of the Appellate Court. The care which, as a matter of law, plaintiff was bound to prove was such degree of care as a reasonably prudent person would exercise under similar conditions. On that question he would not be entitled to prove the mere fact that other persons boarded the defendant's cars while in motion, for the purpose of establishing a standard of

ordinary care, regardless of whether those persons were reasonably prudent or negligent in so doing. At this hour of the day there was a great amount of travel at the point in question, and the general public embraces not only the reasonably prudent and cautious, but the careless, the heedless and the reckless. It is not competent to show, as an excuse for an act of negligence, that others are accustomed to be equally negligent. The evidence did not show a general custom of the public to get upon the cars in that way, and if the jury should conclude that the persons who did so were not reasonably prudent but were careless, that fact would not establish that the plaintiff was in the exercise of ordinary care in doing the same thing. But in this case the evidence was not only of the fact that other passengers got upon cars while in motion at this place, but also that the defendant permitted them to do so without objection, and even encouraged the practice. The evidence tended to prove notice to the defendant of the fact that passengers were likely to get aboard there under those circumstances, and also to prove that the defendant did not discourage the practice or prohibit it, but rather induced it, and a continuance of it, through its conductors, and if those facts were established it became defendant's duty to run its trains with reference to the practice and consistently with it. Plaintiff was a passenger entitled to the degree of care due from the defendant to a passenger, and if the defendant knew that persons would probably be getting on the moving trains at that place and consented to the practice, the law imposed upon it the duty to not expose the plaintiff to unnecessary danger in adopting the practice and to manage the train accordingly. (*Pennsylvania Co.* v. *McCaffrey,* 173 Ill. 169; *Chicago, Milwaukee and St. Paul Railroad Co.* v. *Lowell,* 15 U. S. 209.) The defendant might have had the effect of the evidence properly limited when it was admitted, or by instruction, but as it was competent for one purpose it was not error to admit it.

The trial court gave to the jury, on its own motion, the following instruction, numbered 31:

"Neither by these instructions or the special interrogatories, nor by any words uttered or remark made by the court during this trial, does or did the court intimate or mean to give, or wish to be understood as giving, an opinion as to what the proof is or what it is not, or what the facts are in this case or what are not the facts therein. It is solely and exclusively for the jury to find and determine the facts, and this they must do from the evidence, and, having done so, then apply to them the law as stated in these instructions. The instructions given to the jury are and constitute one connected body and series, and should be so regarded and treated by the jury; that is to say, they should apply them to the facts as a whole, and not detached or separated, any one instruction from any or either of the others."

The objection made to this instruction is, that it gave the jury to understand that they were independent of the law. The ultimate questions of the care of the plaintiff and negligence of defendant were to be determined by the jury by applying the law as stated in the instructions to the facts as proved by the evidence, and it would be error to give an instruction impressing upon them their independence of the court and the law. (*Ludwig* v. *Sager*, 84 Ill. 99.) But we do not think the instruction is subject to that criticism. It directs the jury to find and determine the facts from the evidence, and to apply to such facts the law as stated in the instructions. It is correct as a proposition of law.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*