### James H. Eckels et al., Receivers, v. Bridget Donohue.

#### Gen. No. 13,365.

1. EXPERT—*when qualification of, sufficient.* An expert witness upon the question as to within what time a motorman may reasonably be expected to stop an electric car with the proper application of sand, may qualify through an experience kindred to the handling of motor cars.

2. EVIDENCE—*when admission of erroneous, upon question of damages will not reverse.* The erroneous admission of evidence bearing upon the question of the amount of the damages to be awarded will not reverse if the verdict in amount is supported by other competent evidence.

3. CONDUCT OF COUNSEL—*when will not reverse.* Notwithstanding the conduct of counsel may be subject to the charge of gross impropriety, it will not reverse if prejudice does not appear to have resulted.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. ARTHUR H. CHETLAIN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1906. Affirmed. Opinion filed November 8, 1907.

JOHN A. ROSE and ALBERT M. CROSS, for appellants; W. W. GURLEY, of counsel.

JOHNSON & BELASCO and JOHN R. McCABE, for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

This is an action in which appellee recovered a judgment against appellants for personal injuries occasioned by a collision at the intersection of Sangamon and Randolph streets, Chicago. A south-bound Sangamon street car was run into and derailed by an Ogden avenue car running west on Randolph street, where the tracks cross each other at right angles.

It is said in behalf of appellants that "the most vital question in the case was the question of the distance within which a heavy, large, air brake car, going at eight miles an hour, could be stopped on a good rail, and what difference it would make in the distance within which it could be stopped if the rail was slippery and greasy." There is evidence tending to show that there was heavy traffic both with teams and street cars at the place where the accident occurred, and that this resulted in a deposit on the rails of dirt mixed with oil from the cars and that wet, light snow, such as had fallen at the time, produced a slippery or greasy rail, upon which, notwithstanding brakes or even a reverse application of the power, a car would slide a considerable distance beyond that in which it could ordinarily be stopped. Motormen called as expert witnesses by appellants testified to the effect that such a car on a good or clean rail could be stopped within sixty or seventy feet if going seven or eight miles an hour; but that upon a "greasy rail" a stop in eighty or ninety feet would be doing well. The Randolph street car, as it seems to be conceded, had approached the crossing at a rate of about eight miles an hour. The Sangamon street car had the right of way and had gotten so far over the point where the Randolph street rails cross its tracks that it was struck on its side at or near its rear end. When the Randolph street car was about seventy-five feet away from and approaching this crossing there is evidence tending to show that its mo-

torman, who had been so employed only about six weeks, did what he then could to stop the car and prevent the collision. It is claimed that but for the slippery or "greasy" condition of the track at this point he would have succeeded and the accident would not have occurred. It is contended therefore that the injury was caused by an unavoidable accident.

Complaint is made that upon what is claimed to have been a pivotal point in a close case there were erroneous rulings upon the admission of evidence. The evidence objected to is that of one or two witnesses called in behalf of appellee, the first of whom had been a motorman and testified to the effect that no matter how dirty the rail, if sand was applied by the motorman it would enable the brakes to stop a car. It is urged, however, that the other witness, O'Connor, who had been an engineer on the Illinois Central railroad, did not qualify as an expert and that his testimony should not have been admitted, because his experience was confined to steam railways. Whatever may be the weight to which the testimony of the witness was entitled, we think it was not improper to admit it. It would scarcely be conceded that the only witnesses who could be permitted to testify as experts were those in appellants' employ as motormen. A witness who has had experience in running locomotive engines on railways, who has had a similar kind of experience in applying brakes, sanding rails and stopping engines and cars, to that of a motorman on street cars, was, we think, sufficiently qualified to give his opinion as an expert in the present case, as to whether a car under the conditions present at the time of the accident should be stopped within half its length if the sand was properly applied.

We are not, however, disposed to scrutinize this testimony closely, in view of appellants' contention that the accident was unavoidable because a new motorman did not stop his car in time to prevent an accident such as occurred in this case. The conditions which it is

said made it difficult to stop within the same distance as when the track was not "greasy" merely required the use of care proportionate to the need, when approaching the crossing, so that the motorman should have the car under such control as to prevent a collision. If it be true that the motorman in this instance was not sufficiently experienced for such an emergency, then appellants can scarcely be deemed to have exercised due care in placing him in charge of the car. There is no evidence that we can discover supporting appellants' contention that the accident was unavoidable.

It is urged that it was error to permit medical experts to testify that a surgical operation might benefit the appellee, there being no evidence that she intended or expected to undergo such operation. We regard such testimony as of more than doubtful propriety, and the error might have been serious had the amount of the verdict been such as to justify an inference that the jury had added the expense of such operation and damages for the suffering so caused to the amount of their award of damages. It is evident, however, that the award of $2,000 is justified by other and competent evidence substantially undisputed.

There was also gross impropriety in the question put by appellee's attorney in reference to an expert witness called by appellants. The question was utterly uncalled for and inexcusable on any ground. In many cases such a remark notwithstanding the apology of the attorney and the statement of the court might require a reversal of the judgment. We are of opinion, however, that in this instance it was not prejudicial.

Complaint is made of three of the instructions given at the instance of appellee's attorneys, which is based not upon the ground that the instructions are incorrect, but that in a case which appellants' attorneys deem "a case very close upon the facts," "it was reversible error for the court to give three lengthy instructions,

three times repeating this rule to the jury.'' The instructions, while referring to the same general rule relating to the duty of a carrier of passengers, differ in other respects, and are not, we think, open to the objection urged of unduly emphasizing the rule. The objection made to the fifth instruction has been overruled in N. C. St. R. R. Co. v. Kaspers, 186 Ill. 246-250, and again in N. C. St. Ry. Co. v. Wellner, 206 Ill. 272-274.

While some of the claims in reference to appellee's injuries seem to us not supported by the most credible evidence, we are nevertheless of the opinion that there is evidence justifying the amount of the verdict and that the award of damages is not excessive. The judgment of the Superior Court will be affirmed.

*Affirmed.*