IN THE

# SUPREME COURT

OF

# OREGON

Argued November 1; decided December 7, 1897.

## FINSETH *v.* SUBURBAN RAILWAY COMPANY.

[39 L. R. A. 517, 51 Pac. 84.]

NEGLIGENCE OF STREET RAILWAYS—DUTY TO PASSENGERS.— A street car company is not under obligation to provide for its patrons cross-ways from its stopping places in the street to the sidewalk (*Smith v. City Railway Company*, 29 Or. 539, approved); but if for any reason it does erect such passage-ways it must, at its peril, construct and maintain them in a reasonably safe condition.

IDEM.— Where a street-railway company erects a temporary sidewalk over a flooded street, for the use of its passengers in going from one car to another, it is not bound to construct the passage-way in a manner as reasonably safe "as possible," it is enough if the way is reasonably safe.

DUTY TO PASSENGERS—PROVINCE OF JURY.— In an action against a street-railway company for damages sustained while crossing a temporary sidewalk erected by the company over a flooded street, for the use of its passengers in going from one car to another, an instruction that, if the walk was so constructed as to be dangerous for passengers to cross it at night without a light, then it was the company's duty to have provided a light, was erroneous, as the means indicated by the court as a protection against the danger was too limited, it being for the jury, and not the court, to say what means should have been adopted.

From Multnomah: HARTWELL HURLEY, Judge.

Action by Anna Finseth against the City and Suburban Railway Company for damages. Judgment for plaintiff, and defendant appeals.

REVERSED.

For appellant there was a brief over the name of *Dolph, Mallory & Simon,* with an oral argument by *Mr. Rufus Mallory.*

For respondent there was a brief over the name of *Flegel & Stanislawsky,* with an oral argument by *Mr. Austin F. Flegel.*

MR. CHIEF JUSTICE MOORE delivered the opinion.

This is an action by Anna Finseth against the City and Suburban Railway Company to recover damages sustained in consequence of an injury received while crossing over a roadway alleged to have been negligently constructed by defendant. The facts are: That in June, 1894, defendant was the owner of and operated an electric street railway in the City of Portland, the line of its road extending across the Willamette River upon Morrison Street Bridge, the east approach to which, for a distance of about five hundred feet, in consequence of an unprecedented rise in the river, was covered with water to the depth of about four feet, hereby obstructing travel on electric cars. In order to accommodate its passengers, defendant erected upon the north side of East Morrison street a temporary sidewalk, consisting of two lines of planks, each twelve inches wide, laid about twelve inches apart, and resting upon railroad ties placed one

upon another at right angles with the planks, in such manner as to form piers, situated about eight feet apart, and of sufficient height to be above the water; the whole structure being weighted down and held in place by iron rails. On the eleventh of said month plaintiff purchased from defendant a ticket, and at about ten o'clock at night entered one of its cars at the west end of Morrison Street Bridge, in crossing which she surrendered her ticket, and received from the conductor in lieu thereof a transfer check, which entitled her to ride on another car of the company from the east side of said submerged district to the intersection of East Twenty-First and Clinton streets; and, having arrived at the east end of said bridge, she alighted from the car, and attempted to pass over the structure in question, which was used by defendant's passengers and the public, but, the night being dark, and the passage-way poorly lighted, and having no guard or railing, her foot slipped between the planks, and, falling thereon, she sustained the injury of which she complains. The issues having been joined, a trial was had, resulting in plaintiff's obtaining a judgment for the sum of $500, from which defendant appeals.

The important question for consideration is the duty, if any, which the defendant owed to the plaintiff at the time of the accident. The measure of care demanded of a common carrier must always be in proportion to the degree of danger to which passengers are subjected by the means

adopted for their transportation or accommodation; and, notwithstanding a person, for some purposes, may be deemed a passenger before he enters or after he leaves a car, the carrier does not owe him, under such circumstances, that degree of care which it is incumbent upon the company to exercise when he is seated within its car, and has surrendered himself to an observance of its rules. The negligent operation of an electric car may cause the death of or inflict great bodily injury upon a passenger, and for this reason the law of humanity wisely demands that a carrier, while nct an insurer, must exercise, in the management of such dangerous agencies, the highest degree of care in protecting its passengers from harm which could be prevented by reasonable foresight. *Moreland* v. *Boston, etc., Railroad Company* 141 Mass. 31 ( 6 N. W. 225.) A street-car company lays its track chiefly upon, and operates its cars in, the public streets of a town or city, and, unless prohibited by municipal ordinance, may stop at any place along its line to permit passengers to enter its cars or depart therefrom. In the very nature of things, such a carrier can have no stations, for to permit it to erect and maintain them would amount to a needless obstruction of the public highway; and hence, when operating its cars within the limits of a city or town, it must receive its passengers from, and discharge them in, a public street; and, as was said in *Creamer* v. *West End Railway Company*, 156 Mass. 320 ( 32 Am. St. Rep. 456, 31 N. E. 391), " The street is in no sense a passenger sta-

tion, for the safety of which a street railway company is responsible. When a passenger steps from a car upon the street, he becomes a traveler upon the highway, and terminates his relations and rights as a passenger; and the railway company is not responsible to him as a carrier for the condition of the street, or for his safe passage from the car to the sidewalk." A street-car company, having no stations, owes no duty to the public or to its passengers to erect or maintain a passage-way from its stopping places in the street to the sidewalk; and when it discharges its passengers in the highway its contract has been fully performed, and the relation of carrier and passenger thereupon ceases: *Smith* v. *City Railway Company*, 29 Or. 539 (46 Pac. 136, 780). The tickets it issues do not prescribe at what point on its line the passengers may enter or leave its cars, but a person having obtained a ticket or paid his fare to the conductor could probably commence a journey at any stopping place, and ride in its car to any point within the termini of its line; but if he leaves the car, for any purpose, without having obtained a transfer check, the contract of transportation would be fully performed by the carrier. If, however, the passenger obtains such evidence of his right to resume the journey, there must be, of necessity, an interruption of the relation of carrier and passenger from the moment he leaves one car until he enters another; but would this interruption relieve the carrier from liability to a person injured while going from one car to another over a passage-way erected by it for the accommodation of such

persons and to facilitate its business? The answer
to this question must depend upon the duty, if any,
which a carrier owes to those persons whom it in-
vites to use such portage, for negligence in all cases
must be predicated upon a breach of duty.

The defendant was not obliged to construct a
passage-way across the submerged street, but, having
done so, it thereby invited its passengers to travel
over the same, and tacitly represented to them that
it was reasonably safe for that purpose; and, such
being the case, did it owe to them any duty to
maintain or light the way because it was laid upon
a public street? The walk having been erected to
serve a temporary purpose only, we think it cannot
be said that, because it had been used by the pub-
lic for a short time, the municipality thereby adopt-
ed and accepted it as a part of its system of high-
ways; for when the water receded the sidewalk con-
structed by the city would be used, and the pas-
sage-way so erected by defendant, which theretofore
had been useful as a part of the highway, must
necessarily become a nuisance. If plaintiff, without
fault upon her part, had sustained the injury com-
plained of in the manner indicated, after the water
had fallen, there is but little doubt that defendant
would have been liable therefor, if, in consequence
of its neglect, the passage-way became unsafe; for
no person has the right to do an act which renders
the use of the street hazardous, or less secure than
it was left by the municipal authorities. Whoever
does so by placing unauthorized obstructions there-
on, becomes a nuisancer, and is liable to any per-

son who, using due care, sustains any special injury therefrom.  2 Dillon's Municipal Corporations § 1032. But while the freshet continued the walk in question could not be considered a nuisance, or even an obstruction, for it was the only means by which the public was enabled to use the street, and without it travel would have been suspended.   Defendant having constructed the way to facilitate its business, and to accommodate persons who might be induced to patronize its cars, owed to such persons at least the duty of keeping it, as long as it might be used for that purpose, in a reasonably safe condition, and, having invited plaintiff to pass over the same, it is liable for any neglect in that respect; but it owed no greater duty, and is not chargeable with a higher degree of care and diligence, by being a common carrier, than is expected of a private individual under similar conditions: *Railroad Company* v. *Warlick* (Ind. Ter.), 35 S. W. 235.

With this understanding of the rule, it becomes necessary to examine that portion of the judge's charge to which defendant excepts.   The jury was instructed as follows: " ( 1 ) If the defendant in this case undertook to transport passengers for hire over its road from the west side to points on the east side of the Willamette River, in this city, and for that purpose undertook to provide and construct a walk or elevated passage-way over that part of East Morrison street where its tracks and the street were obstructed by the flood, so that such passengers could use the same for the purpose of passing from one car of the defendant to another over such

obstruction, it was its duty to construct such walk
or passage-way in a manner as reasonably safe as
possible, taking into consideration the condition of
this part of the flooded district, and to keep it in
such reasonably safe condition as long as it was
under its control, and continued to be used for pas-
sage of passengers from one car of defendant to an-
other; and if you believe from the testimony that
the defendant undertook to and did construct this
walk for such purpose, but failed and neglected to
construct it in a reasonably safe condition, taking
all the circumstances into consideration, or failed
and neglected to keep it in such reasonably safe
condition during the time it was being used for de-
fendant's passengers, and under its control, and that
by reason of such failure and negligence and un-
safe condition of such walk the plaintiff, while
passing over said walk from a car of the defend-
ant's on the west, in which she had been riding as
a passenger, to a car on the east of such walk, up-
on which she was to continue her passage to her
place of destination, fell, and was injured thereby,
without any fault or negligence on her part, then
it is your duty to find in favor of the plaintiff." It
will be observed that the jury were told that it was
incumbent upon defendant to construct the passage-
way in a manner as reasonably safe as possible,
etc. This, in our judgment, carries the liability too
far. Defendant was required to make the walk rea-
sonably safe, it must be admitted; but when this
degree of care is so qualified as to render the walk
as reasonably safe as possible, it thrusts upon a

carrier a duty never hitherto demanded, and, if it were to prevail, would tend to render a carrier liable in all cases, for, after an accident occurs, and the cause of it is ascertained, it would not be difficult to procure witnesses to say that, in their opinion, it was possible to have guarded against its occurrence, and thus have prevented the injury.

The court also gave the following instruction: "(3) In this case, if the walk was so constructed that it would be dangerous for defendant's passengers to use it in passing over the same from one car of the defendant to another in the darkness, or during the night-time, without a light, then it was the duty of the defendant to have provided a light during such darkness; and, if it failed and neglected to do this, and for this reason the plaintiff, while attempting to cross over said walk as such passenger, fell and was injured thereby without any negligence or fault on her part, then your verdict should be in her favor." If the walk was so constructed that it was dangerous for defendant's passengers to use the same after night, it could doubtless have rendered the way safe by other means than by lighting it. In *Vicksburg Railroad Company* v. *Howe*, 52 Miss. 202, the track being obstructed by a wrecked freight train, a passenger, on a dark and rainy night, was obliged to walk around the obstruction to another train, and in doing so fell from some planks laid over a ditch, and sustained the injury complained of. There was no light there, nor was any person stationed at that point to warn the passengers of danger, and it was held that

the failure to place a light at the crossing of the ditch, or to give any warning of the danger, or to take some means to guard passengers against injury from the extra hazard to which they were exposed in crossing, was such negligence as rendered the company liable for any injury sustained by passengers in crossing. In that case the crossing was temporary, and other means than a light were considered adequate protection against the danger incident to the transfer. The defendant having undertaken to provide a passage-way for the convenience of its passengers and those intending to patronize its cars, it was required to select substantial materials, and construct the way with a view to safety, considering the nature of the temporary use for which it was designed; and, so long as defendant continued to use the passage-way to facilitate its business, it was in duty bound to maintain it in like condition, and for any neglect in this respect it would be liable to a person sustaining injury thereby whom it invited to pass over the same. The passenger, however, is charged with notice of the temporary character of the structure, in view of which necessity compels him to use common prudence in its use, failing in which it would constitute such contributory negligence as would preclude a recovery. It was the duty of the defendant to render the passage-way reasonably safe for the accommodation of its passengers, but what constitutes due and reasonable care cannot ordinarily be defined as a matter of law, but must depend upon the circumstances of each individual case. *Gaynor*

v. *Old Colony, etc., Railroad Company,* 100 Mass. 208 (97 Am. Dec. 96). It is for the jury to say, from a consideration of all the circumstances of the case, whether the passage-way was reasonably safe, in view of the temporary purpose it was designed to serve, and whether the carrier had supplied such means for its use after night as an ordinarily prudent person would have furnished to render it reasonably safe in the darkness under like conditions. In the case at bar we think the means indicated by the court as a protection against the danger are too limited, and that it was for the jury, and not the court, to say what means should have been adopted for that purpose. These instructions being erroneous, the judgment is reversed, and a new trial ordered.

REVERSED.

Decided December 7, 1897; rehearing denied.