ALBERT M. WHILT, PLAINTIFF IN ERROR, v. PUBLIC SER-
VICE CORPORATION OF NEW JERSEY, DEFENDANT IN
ERROR.

Argued June 25, 1908—Decided November 16, 1908.

The plaintiff was a passenger on a trolley car from which it was necessary that he should transfer to another belonging to the same carrier, in order to reach his destination. He alighted from the first car at the usual point of transfer and immediately started to pass in the rear of the car, and in doing so fell into the rear fender, which was down, and was injured. It appeared that the usual custom of the company was to have the rear fender fastened up. *Held*, that while in passing from one car to another, the plaintiff continued to be a passenger of the defendant company, no inference of negligence on the part of the defendant could be drawn from the fact that the car was being run with the rear fender down.

---

On error to the Supreme Court.

For the plaintiff in error, *William Early* and *Carrow & Kraft*.

For the defendant in error, *Edward A. Armstrong*.

The opinion of the court was delivered by

BERGEN, J. The defendant, as a common carrier, under-
took to transport the plaintiff from Merchantville to West-
mont on its trolley cars, and in order to carry out this under-
taking it was necessary to transfer the plaintiff from one car
to another; to accomplish this he was required to leave the

first car at Market and Seventh streets, in the city of Camden, and walk along the latter street to Federal street, at which point he would meet another of defendant's trolley cars on which he expected to be carried to his destination. The plaintiff left the car at Seventh street, and immediately started to pass behind it, in order to reach the sidewalk, but so near that he struck a fender which projected from the rear of the car a distance of about four feet, fell into it, and was injured.

Whether the fender obstructed a street crossing walk does not appear; all the plaintiff testifies to is, that he "rode in the car down to near Seventh street," where he got off; that "I started to walk across the street at the rear of the car thinking I had a clearer passage." He also testified that he was not certain that the car was in motion when he started to cross the street, but that it was moving at the time he struck the fender. There was evidence from which a jury might properly infer that the usual practice of the defendant was to have the rear fenders fastened up against the end of the car by means of a chain, while at the time the plaintiff started to pass in the rear of the car the fender was down. On this state of facts there was a nonsuit, the legal propriety of which we are required to review.

On a previous trial of this cause there was a verdict for plaintiff, which was set aside by the Supreme Court on rule to show cause, and a new trial ordered (*Whilt* v. *Public Service Corporation,* 45 *Vroom* 141), and it was there held that the fact that the fender was down, contrary to the usual custom, was not sufficient to justify an inference of negligence; that whether the street railway company should have a fender at one end only, or at both, was a matter of detail in the construction of its cars which ought to be left to the reasonable judgment of the managers, and while proof that it was usual to have the fender up, would have an important bearing upon the question of the care exercised by the plaintiff, it was not sufficient to justify an inference of negligence on the part of the defendant; that to hold that a change in the method of carrying fenders on a street car justified an

inference of negligence, would subject the defendant to the peril of being held negligent whenever it made an improvement in the construction of its cars. This conclusion is supported, so far at least as it relates to persons not passengers of the company, by *Gargan* v. *West End Railroad Co., 176 Mass.* 106. The case presented on rule to show cause was determined upon the *status* of the plaintiff as a pedestrian using the highway, and not as a passenger to whom a higher degree and a different sort of care might be due.

The best considered cases support the proposition that when a passenger steps from a street car upon the street, he, ordinarily, becomes a traveler upon the highway and terminates his relation as a passenger, and the carrier is not responsible for his safe passage from the street to the sidewalk, for once safely landed in the street he becomes a pedestrian on the public highway entitled only to such measure of care from the carrier in the management and operations of its cars as the law imposes in such cases. But in the present case it is insisted that the plaintiff, by virtue of a transfer ticket given him on the first car, continued his relation as a passenger until he had reached his selected destination, and that the care which the company owes to a passenger is of a higher grade than that due a pedestrian using a public street. It is the rule in this state that in the ordinary case of a transfer from one car to another the traveler continues to be a passenger during the transfer. *Walger* v. *Jersey City, &c., Railway Co., 42 Vroom* 356.

In the case under review the plaintiff, by virtue of a transfer ticket given him on the first car, was entitled to be transported to his destination, and for such purpose it was necessary that he be transferred from one of defendant's cars to another, but it is admitted that his contract for passage required that he should alight from the first car at Seventh street and walk, from the point where he knew he must leave the car, along Seventh street for a distance at least of a city block. Whether the relation of passenger and carrier was suspended during any part of the time plaintiff was passing along Seventh street it is not necessary to decide, for the ac-

cident happened before plaintiff had reached the sidewalk, or passed from that part of the street where defendant was operating its cars, and the injury was caused by contact with the very car he had left, and immediately thereafter.

The defendant knew that it was necessary that plaintiff cross the street in order to reach the second car by the usual and most direct route, and was bound to exercise toward him the care due to a passenger, at least until he had reached a point sufficiently distant to avoid any danger resulting from the negligent management or condition of defendant's appliances. We are therefore of opinion that when this accident happened plaintiff was still defendant's passenger and entitled to have it exercise reasonable care, skill and foresight in carrying him to his destination, and if it failed to do so, it was negligent.

The plaintiff rests his right to recover in this case upon the ground that reasonable care, skill and foresight was not exercised by the defendant in his behalf as a passenger, because the rear fender was down on the car from which he alighted, although the usual practice of the defendant was to have it fastened up, and therefore a presumption of negligence arose. In order to affirm this proposition we are required to hold that a presumption of negligence arises whenever the managers of a street railway company make any change in the method of carrying the fenders on its cars without giving notice to its passengers of the change in the method. We think no such presumption arises. The accident did not occur through any negligence of operation or management; the plaintiff was safely landed, the car was moving forward, and plaintiff undertook to pass in the rear of the car before the fender, an ordinary part of a car, had passed him, and the cause of the accident, accepting the view most liberal for the plaintiff, was the lengthening of the car and its attachments. Street cars are usually provided with fenders at each end, and whether they shall be run with both fenders down, or one up and the other down, is a matter that must be left to the reasonable discretion of the company. This car was being operated in a place where it had a right to

be, and we are of opinion that if the rear fender had always been carried as it then was, or that if changed from a movable to a rigid one, negligence would not be inferred from such a condition. But it is insisted that because on this car the rear fender was down when the custom had been otherwise, such change justifies an inference of negligence, unless the passenger was notified of the change, but this we do not concede, for as was said by the Supreme Court in *Whilt* v. *Public Service Corporation, supra,* this would require an inference of negligence whenever the defendant made an improvement in the construction or management of its cars, and we are of opinion that the care due from a carrier to its passenger does not require notice to him of every change made in the construction of its cars or the manner of carrying a proper attachment to it, if the additional use of space in the highway, required as a consequence of such change, is limited in its scope to the right granted the company.

There being no other evidence of negligence than the fact that the rear fender was down, the nonsuit was proper and the judgment should be affirmed.

GARRISON, J. (dissenting). The opinion of Mr. Justice Bergen states the pertinent facts of this case so fully and the pertinent rules of law so fairly that if it were not for his conclusion that the negligence of the defendant could not be inferred therefrom I could concur in the opinion as amply justifying my conclusion that the negligence of the defendant was not only inferable, but had been *prima facie* made out.

This general concurrence in the statements of the opinion extends to its specific statement of the legal relation of the parties and of the kind and degree of care that was owing by the defendant to the plaintiff as its passenger. I think it also extends to the statement that when the defendant had landed the plaintiff in the highway its responsibility to him for the safety of the highway and its incidents was at an end, or perhaps never existed.

The point at which we part company is not one either of fact or of law, but is rather a conclusion of fact that consti-

tutes the entire logical groundwork of, the result reached by the opinion. This conclusion of fact is that plaintiff's injury resulted from an unsafe condition incident to the highway for which the defendant was not legally responsible, whereas I think that the plaintiff's injuries resulted from an abnormal condition of the car which he had just left and which had not passed on so as to be beyond the probable contingence of its inflicting such injury upon him. The distinction is both clear and conclusive of the present case. For if it be admitted that the defendant was under no duty to safeguard its late passenger with respect to dangers incident to the public highway in which it had set him down in a place of safety, which is what the opinion holds, it by no means follows that it enjoyed a like immunity with respect to an injury resulting from the dangerous condition of its own property occasioned by the carelessness of its own servants. It may be that when the defendant had exercised reasonable care in the selection of the place in the public street at which to let the plaintiff off its car its duty to him for the condition or dangers of the street *qua* street was at an end; but its duty to use reasonable care that he should not be injured by an abnormal condition of its car was a continuing one that lasted as long as there was a reasonable probability that such injury might result from such condition. That such abnormal condition of the defendant's car, if dangerous and likely to occasion injury to passengers just alighted therefrom, would, if caused by the carelessness of defendant's servants, lay the foundation for a legal action, would seem, upon general principles, to be so clear that it is only by regarding such danger as merely an incident of the highway for which the defendant was not responsible that its controlling effect in the present case can be avoided.

If such danger, however, be regarded as due to a careless disarrangement or maladjustment of the defendant's car that was likely to occasion to passengers the very accident that befell the plaintiff, there is no sound principle of law that will absolve the defendant from responsibility for such careless act of its servants.

Whether the condition of the defendant's car by which the plaintiff was injured was due to the carelessness of the defendant's servants, and whether such condition was an abnormal one likely to occasion such an accident as the plaintiff's were surely questions of fact that must, under our trial system, be answered one way or the other by a jury.

The foregoing, without further elaboration, will indicate why I think the nonsuit in this case was legal error and will sufficiently suggest to those of my brethren who think the nonsuit was proper the ground upon which I differ from them.

*For affirmance*—THE CHIEF JUSTICE, SWAYZE, REED, BERGEN, VOORHEES, MINTURN, BOGERT, DILL, J.J. 8.

*For reversal*—THE CHANCELLOR, GARRISON, TRENCHARD, PARKER, VREDENBURGH, VROOM, GREEN, J.J. 7.