## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### VIRGINIA RAILWAY AND POWER COMPANY V. DRESSLER.

March 16, 1922.

Absent, West, J.

1. STREET RAILWAYS—*Who are Passengers—Transfer at a place not a Transfer Point—Question for Jury—Case at Bar.*—In the instant case, an action for personal injuries against defendant street railroad, defendant insisted that plaintiff was not a passenger "because she was attempting to transfer at a place which was not the transfer point." It appeared from plaintiff's evidence that she had been using defendant's cars and making the transfer in question for nearly two years without objection. She had no notice of a change in the regulations of the company in regard to transfers at this point. A number of witnesses testified that the point in question was a regular transfer point for passengers going west. Plaintiff asked for a transfer for the west and the conductor punched a transfer and handed it to her without objection.

   *Held:* That the question was properly referred to the jury, and upon review the Supreme Court of Appeals could not say, under the circumstances, that plaintiff was attempting to transfer at a place which was not a transfer point.

2. STREET RAILWAYS—*Who are Passengers—Questions of Law and Fact.*—Where, upon the question of whether plaintiff was a passenger of defendant street railroad at the time of her injury, the facts which determined the relation of the defendant to the plaintiff were not disputed, the rights, duties and liabilities of the respective parties presented a pure question of law to be determined by the court, and it was error to refer them to the jury.

3. STARE DECISIE—*Respect to which Dicta Entitled.*—It is a maxim not to be disregarded that general expressions, in every opinion, are to be taken in connection with the case in which these expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in the subsequent suit when the very point is involved for decision. The

reason of this maxim is obvious. The question before the court is investigated with care and considered in its full extent. Other principles which may serve to illustrate it are considered in their relation to the case outside, but their possible bearing on the very case is seldom completely investigated.

4. STREET RAILWAYS—*Who is a Passenger—Holder of a Transfer Ticket Walking in the Street.*—The relation of carrier and passenger is not sustained while a passenger with a transfer is outside of the direction and control of the carrier and walking along the public highway from one car to another.

5. CARRIERS OF PASSENGERS—*Care Required of Carrier—Reason for the Rule.*—The reason for the high degree of care required of carriers of persons is the tender regard the law has for human life and limbs, and the fact that the carrier has the selection, control, management and operation of the whole instrumentalities of carriage, and a limited control over and direction of the conduct of the passenger.

6. STREET RAILWAYS—*Who is a Passenger—Holder of a Transfer Ticket Walking in the Street.*—In the interim between leaving the car and offering himself as a passenger on another, the passenger is not under the care or custody of the carrier, nor subject to his direction or control, and may be far from the carrier's powers of observation. It would seem unreasonable, therefore, to hold the carrier liable to one as a passenger during such interval.

7. STREET RAILWAYS—*Who is a Passenger—Holder of a Transfer Ticket Walking in the Street—Case at Bar.*—In the instant case, plaintiff, holder of a transfer, was not injured by the car she alighted from, nor the car she intended to board, but was struck by another car of defendant before she reached the point of re-embarkation. Defendant exercised no control of plainitff while she was walking in the street from one point to the other, nor had defendant invited her to take any particular route.

*Held:* That plaintiff was not at the time of the accident a passenger of the defendant company, but simply a pedestrian to whom defendant owed no greater duty than to other pedestrians crossing its tracks.

Error to a judgment of the Hustings Court, Part II, of the city of Richmond in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*E. R. Williams* and *T. Justin Moore,* for the plaintiff in error.

*John Marshall Turner, John J. Wicker, Jr.,* and *Minitree J. Fulton,* for the defendant in error.

BURKS, J., delivered the opinion of the court.

This is a personal injury case in which the defendant in error (hereinafter called the plaintiff) recovered a judgment against the plaintiff in error (hereinafter called the defendant) for the sum of $7,500, which we are asked to reverse for the reason hereinafter stated.

Naomi C. Dressler (the plaintiff) had resided in South Richmond for several years prior to the injury complained of, and she and her sister for about two years had been working in the factory of the British-American Tobacco Company, located near Broad street, west of First, in the western end of the city. In going to and from their place of business they traveled on cars of the defendant company, which operated a double-track, electric street car line between the points mentioned. The defendant operated several different lines over Main and Broad streets between Fourteenth street and First street, among them a line known as Oakwood and Broad. The main line operated in South Richmond was known as the Hull street line. During the period aforesaid, about two years, the plaintiff had regularly boarded the Hull street car, asked for and obtained a transfer over the Main street line at the intersection of Fourteenth and Main streets, and been carried to her destination. On March 3, 1918, the defendant established and put into operation a through route by which certain Hull street cars entered the Main street

line at Fourteenth street and, passing over designated portions of Main and Broad streets, went to the western suburbs of the city. On this route, Fourteenth and Main was a transfer point for passengers going east, but not for passengers going west. According to the regulations of the company, the only proper transfer point for a passenger going west on Broad beyond First street was First and Broad. On March 30, 1918, the plaintiff and her two sisters and a friend, all of whom worked at the factory of the British-American Tobacco Company, boarded one of these through cars in South Richmond, paid their fares, and asked for transfers at Fourteenth and Main *west.* The conductor punched and handed to each of them a transfer, without explanation or suggestion that the transfers were not what they desired, or could not be used for the trip desired. Fourteenth and Main was a proper transfer point for cars on the Hull street route known as "trippers," or cars that turned back at that point. It does not appear that the plaintiff and her companions had notice of the establishment of the new through route and the regulations as to transfers therefrom, but the plaintiff's sister testified that, after March 3, 1918, as well as before, they had obtained and used (without notice to the contrary, or demur) transfers west at Fourteenth and Main. The testimony for the defendant is clear that no one had authority to issue a transfer west at Fourteenth and Main, but the testimony of the conductor who issued the transfer is not altogether satisfactory as to transfers issued by him, for after testifying that "I didn't give them west Main at Fourteenth," he was asked by counsel for the defendant company, "Would you have given a transfer there at all west?" He replied: "I don't think I would, but, as to remembering whether I did or not, I don't remember." Brice, the division superintendent of the defendant company, also testified that he had heard "since the trial was on" that some of the company's

men had accepted transfers west on Main at Fourteenth street and some had refused them, and that if the plaintiff had asked for a transfer west at Fourteenth and Main the conductor should have given her one at First and Main, and that "he should have told her." The plaintiff and her companions accepted the transfers, as usual, without examining them to see how they were punched. The transfer actually given was lost in the confusion of the subsequent collision, and was never found. An unpunched transfer of the same class was offered in evidence. The Hull street car on which the plaintiff was riding stopped in Fourteenth street, at the usual stopping place for passengers to alight, a short distance south of Main street. The point where the plaintiff actually alighted to the pavement on Fourteenth street was approximately forty to fifty feet south of the southern curb line of Main street. She was one of the first passengers to alight from the car at this point, and was the first of her party. After alighting to the street on Fourteenth street, she walked over to the eastern side of Fourteenth street and waited on the sidewalk for her companions to join her there. She and her companions then walked along the sidewalk on Fourteenth street towards Main street until they reached the south curb of Main street, and then undertook to cross Main street from the south sidewalk to the north side of the street, where she and her companions intended to board the west-bound Broad and Main street car, which would carry them to their destination on Broad street west of First. There was no Broad and Main car standing for passengers to board at Fourteenth and Main streets at that time, but such a car was approaching in sight some considerable distance east of Fourteenth street. The plaintiff and one of her half sisters walked ahead, and the other half sister and her friend came along just behind. The plaintiff and her companions intended to go to the usual

stopping place for west-bound cars along Main street at Fourteenth, which was a short distance east of Fourteenth street, and to await for this approaching Broad and Main car to arrive, then to board the same and to tender in payment of their fares on the Broad and Main car the transfers which they had received from the conductor of the Hull street car. The front of the Hull street car had then gotten on the east-bound Main street track and, according to the plaintiff's testimony, completely obstructed her view and that of her other three companions west. When the plaintiff and her companions were about five feet from the track which they were going to cross they looked west and saw the Hull street car rounding the curve out of Fourteenth street into Main. About this time the motorman of the Hull street car looked west and saw the Oakwood and Broad car No. 138 west of Twelfth street, and before it had reached Thirteenth he realized that car No. 138 was running wild at a very high rate of speed towards the Hull street car, and thereupon reversed and quickly backed the front end of his car off the east-bound Main street track just far enough into Fourteenth street to get out of the way of car 138, which dashed by the front of the Hull street car, just missing it, running at forty or fifty miles an hour, and ran into and struck the plaintiff, who was then about a car-length east of the Hull street car and almost across the east-bound Main street track, inflicting the injuries here complained of. The testimony as to whether the plaintiff and her companion looked west for approaching cars just before stepping on the track is conflicting.

Most of the assignments of error relate to the rulings of the trial court in granting or refusing instructions. They embody the principles of the case, and the theory upon which the trial was had. It is unnecessary to quote these instructions, as the determination of the underlying princi-

ples will settle the propriety of the trial court's ruling thereon. As the relations of a carrier to a passenger are different from those of a carrier to a pedestrian crossing its tracks, it was important to determine whether the relations between the defendant and the plaintiff was that of carrier and passenger, or of carrier and pedestrian in the street; the plaintiff insisting that she was a passenger, and the defendant that she was not: (1) "Because she was attempting to transfer at a place which was not the transfer point," and (2) "because, at the time of the injury, she was a mere pedestrian walking along the public street over which the defendant had no control." Of these two in their order.

[1] For nearly two years the plaintiff had been boarding the defendant's cars at the same point, transferring at Fourteenth and Main, and riding to the same destination, without question or objection on the part of any one. She had no notice, so far as the record disclosed, of any change in the regulations of the company, and if the company had any intention of insisting on the change, the conductor (in the language of the division superintendent) "should have told her." Furthermore, from March 3, 1918, the date of the change, till the date of the injury, the plaintiff had been receiving and riding on such transfers, without objection. If the plaintiff's transfer had been punched for First and Broad, and she had offered it for passage from Fourteenth and Main, and been refused, the rule laid down in *Va. & Southwestern R. Co.* v. *Hill,* 105 Va. 729, 54 S. E. 872, 6 L. R. A. (N. S.) 899, that as *"between the passenger and conductor,* the terms of the ticket are conclusive" might have been applicable. But no such question is here involved, and we do not wish to be understood as holding that the rule applies to transfers issued by street railways. Notwithstanding the regulations of the defendant company, and the testimony of several of its witnesses, a number of witnesses, one of them a witness for the de-

fendant, testify that Fourteenth and Main was a regular transfer point for passengers going west, and certainly the testimony of the plaintiff's witnesses show that they regularly obtained such transfers. The testimony on the subject was conflicting, and it was not error to refer to the jury the determination of the credibility of the witnesses and the weight to be given to their testimony. If the jury believed the witnesses for the plaintiff, she was in the same position as if Fourteenth and Main was a regular transfer point and her ticket duly punched. She asked for a transfer "at Fourteenth for west," and the conductor punched a transfer and handed it to her without objection, or other indication that she could not use it. She had the right to assume that the conductor had complied with her request and that she could use the transfer as she had theretofore done. *Memphis St. Ry. Co.* v. *Graves*, 110 Tenn. 232, 75 S. W. 729, 100 Am. St. Rep. 803; *Morrill* v. *Minneapolis St. Ry. Co.*, 103 Minn. 362, 115 N. W. 395, 123 Am. St. Rep. 341. Under the circumstances, we cannot say that "she was attempting to transfer at a place which was not the transfer point."

[2] The other question, the relation of the defendant to the plaintiff while walking along and across the public street from the car she had left toward the car she had expected to take, is one of more difficulty, and one upon which the cases are not in entire harmony. Here there is no dispute about the facts, except as to the contributory negligence of the plaintiff, which will be noticed later. The facts which determine the relation of the defendant to the plaintiff are not disputed. On this question nothing is left for the determination of the jury. The rights, duties and liabilities of the respective parties present a pure question of law to be determined by the court, and the trial court erred in referring them to the jury. *W. S. Forbes Co.* v. *Southern Cotton Oil Co.*, 130 Va. 245, 108 S. E. 15; *Dun* v. *Sea-*

*board, etc., R. Co.,* 78 Va. 645, 658-9, 49 Am. Rep. 388. In brief, the facts, so far as they need be stated on this subject, are that the plaintiff alighted from the Hull street car at the usual stopping place, which was forty or fifty feet south of the south-curb line of Main, and walked over to the eastern sidewalk on Fourteenth street and waited for her companions to join her. When they did so, they walked along the sidewalk of Fourteenth street forty or fifty feet to the south curb of Main street, and then attempted to cross Main street to board a west-bound car on Main street at the usual stopping place of the latter car. While attempting to cross Main street, the plaintiff was struck by an Oakwood and Main car which had gotten from under control of the motorman, and was running wild on the east-bound track, at a rate of forty or fifty miles an hour, or more. The car which struck the plaintiff was not the one from which she alighted, nor the one which she expected to take, and at the time the plaintiff was struck she was in the middle of Main street, and had not reached the point at which she was to take the Main street car west. She was not in a proper place to board any car, but was caught in the act of crossing the street while attempting to reach the point at which she could properly board her car. At the time she was struck she had her transfer in her hand. Was she a passenger?

[3] There have been many dicta, but comparatively few decisions, on the subject, and while these dicta are entitled to respect, especially if supported by reason, we have always to bear in mind the oft-quoted statement of Chief Justice Marshall, in *Cohens* v. *Virginia,* 6 Wheat. 399, 5 L. Ed. 257:

"It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which these expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in the subsequent suit when the very

point is involved for decision. The reason of this maxim is obvious. The question before the court is investigated with care and considered in its full extent. Other principles which may serve to illustrate it are considered in their relation to the case outside, but their possible bearing on the very case is seldom completely investigated."

The propriety, if not the necessity, of this observation becomes apparent when we examine a number of the cases relied upon to uphold the view that the relation of passenger continues during a transfer from one street car to another in favor of one holding a transfer. *Keator* v. *Traction Co.*, 191 Pa. 102, 43 Atl. 86, 44 L. R. A. 546, 71 Am. St. Rep. 758, decided in 1899, is much relied on by the plaintiff and is regarded as a leading case on that subject, and is cited in nearly all of the subsequent cases in which the statement is made that the relation of passenger continues during the transfer, and yet the case does not decide that, but on the contrary just the opposite is stated in the opinion. In that case a passenger, with a transfer ticket, was at the proper place for boarding her car and was about to board the same when a piece of trolley pole of the car she was about to board fell on her head and inflicted the injury complained of. The decision was rested on the ground that she was at the proper place to board the car and was injured by the fall of the trolley of the very car she was to take. It is distinctly stated in the opinion that "she was not a passenger while on the sidewalk going from one point to the other."

In *Walger* v. *Jersey City R. Co.*, 71 N. J. Law, 356, 59 Atl. 14, the plaintiff was a passenger on one of the defendant's cars. He alighted from the car for the purpose of transferring to another and a transfer ticket was given him. The place at which he alighted was a regular transfer point, but he had not yet had the opportunity to reach a place of safety after alighting before he was struck by the

car which he had just left as it was going around what is described as "the loop." The rear end of this car struck him and knocked him down, and for this injury he brought his action. The accident is said to have been immediately after he got off the car and before he had taken a single step away from it. Under such circumstances he was held to be still a passenger. This holding accords with the decisions of this court and need not be further considered. *Virginia Trust Co.* v. *Raymond*, 120 Va. 674, 91 S. E. 613; *Houston* v. *Lynchburg Traction Co.*, 119 Va. 136, 89 S. E. 114; *Ellis* v. *Virginia Ry. & Power Co., ante,* p. 24, 110 S. E. 382.

In *Whilt* v. *Public Service Corp.* (1908), 76 N. J. Law 729, 72 Atl. 420, 74 Atl. 568, a passenger obtained a transfer at a point where it was necessary for him to walk a city block before reaching the second car. In alighting from the first car he undertook to walk around the rear of the car, and in doing so fell into the fender on the rear of the car, which was down, though there was evidence from which the jury might properly infer that the usual practice of the company was to have the rear fenders fastened up against the end of the car. In the course of the opinion it was said: "It is the rule in this State that in the ordinary case of a transfer from one car to another the traveler continues to be a passenger during the transfer. *Walger* v. *Jersey City, etc., R. Co.,* 71 N. J. Law 356, 59 Atl. 14. * * * Whether the relation of passenger and carrier was suspended during any part of the time plaintiff was passing along Seventh street it is not necessary to decide, for the accident happened before the plaintiff had reached the sidewalk, or passed from that part of the street where the defendant was operating its cars, and the injury was caused by contact with the very car he had left, and immediately thereafter. The defendant knew that it was necessary that the plaintiff cross the street in

order to reach the second car by the usual and most direct route, and was bound to exercise toward him the care due to a passenger, at least until he reached a point sufficiently distant to avoid any danger resulting from negligent management or condition of defendant's appliances. We are, therefore, of the opinion that when this accident happened, plaintiff was still defendant's passenger and entitled to have it exercise reasonable care, skill and foresight in carrying him to his destination, and, if it failed to do so, it was negligent."

It will be observed on reading this case that while it is stated that in the ordinary case of a transfer from one car to another the traveler continues to be a passenger during the transfer, yet it plainly appears that the decision was rested upon the ground that the defendant had not had an opportunity after leaving the car upon which he was first traveling to reach a place of safety before being injured.

In *Colorado Springs, etc., R. Co.* v. *Petit* (1906), 37 Colo. 326, 86 Pac. 121. Plaintiff was a passenger for hire on an electric road. A section of 250 feet of track was out of repair and not in use, and passengers had to walk over this distance to other cars. It was dark and the way dimly lighted. About 2 A. M., when plaintiff was walking along the side of the track to make the connection, he stepped into an open hole made for a trolley-pole and sustained the injury complained of. There was evidence sufficient to sustain the finding that the hole was dug by the defendant. The hole was dug the day before, and the defendant knew that the way would be traveled by its passengers in the darkness of the following night. Held: "It was guilty of negligence in not using reasonable care to see that the way was reasonably safe before the night came on.   *   *   *   Further, the relation of carrier and passenger existed between the plaintiff and defendant when he was passing from one car to the other, and it was the duty of the defendant to use reason-

23

able care to have the way over which the plaintiff was to pass in a reasonably safe condition. *Chicago, etc., R. Co.* v. *Winters,* 175 Ill. 293, 51 N. E. 901; *St. Louis, etc., R. Co.* v. *Griffith,* 12 Tex. Civ. App. 631, 35 S. W. 741; *Balto. & O. R. Co.* v. *State,* 60 Md. 449, 463."

It seems manifest from the degree of care it is said the carrier owed and from the cases cited that the court did not use the word "passenger" in a technical sense, but that it meant to hold the carrier bound for only *ordinary* care.

We have reviewed the foregoing cases at this point not only because they are relied on by the defendant in error, but because they are the only cases cited by the Supreme Court of Illinois in *Feldman* v. *Chicago Rys. Co.* (1919), 289 Ill. 25, 124 N. E. 334, 6 A. L. R. 1291, to support the statement that the weight of authority holds that a passenger on a continuous journey maintains his character as passenger while making the transfer from one car to another. The court also relies upon its own prior decisions to sustain the same view. This reliance is best answered by the following extract from the dissenting opinion of Chief Justice Dunn and Cartwright, judge, which saves a review of these cases by this court:

"We do not agree with the conclusion that the plaintiff, as a matter of law, was a passenger while walking on the public street. This rule of law as to what will constitute the relation of passenger and carrier has been firmly established by textbooks and decisions, which were carefully reviewed and considered in the case of *Chicago and Eastern Illinois R. R. Co.* v. *Jennings,* 190 Ill. 478, 60 N. E. 818, 54 L. R. A. 827. Upon such review and consideration, it was said to be uniformly held that the condition must be such that the passenger is under the care of the carrier and must be at some place under the control of the carrier provided for passengers, so that it may exercise the high degree of care exacted from it. The plaintiff, having safely alighted

from the defendant's car, started to the place where he expected to take another car, and while walking on the street was not under the care of the defendant nor on any place provided for passengers or using any of the facilities furnished for passengers, but was exercising his right as one of the general public by crossing the street, as he lawfully might.    In the *Jennings Case* the doctrine of the Massachusetts court, which is now abandoned, was indorsed and adopted.    This court has never decided that the relation of carrier and passenger existed under the facts of this case. In *Chicago & Alton Railroad Co.* v. *Winters,* 175 Ill. 293, 51 N. E. 901, the plaintiff was accompanying his carload of sheep to Chicago, and at Bloomington the car was placed in another train being made up for Chicago.    The plaintiff was walking on the east side of the freight train towards the switch yards on the grounds of the railroad company, intending to continue his journey in the caboose of the new train.    There is no resemblance between this case and that of *North Chicago Street Railroad Co.* v. *Kaspers,* 186 Ill. 246, 57 N. E. 849, except that the plaintiff had a transfer ticket.    That ticket entitled him to ride on the cable car line to his destination, and he had got on the step at the front end of the car and was stepping up on the front platform when the speed was increased, and he fell off and suffered the injury for which he sued.    In *Chicago City Railway Co.* v. *Carroll,* 206 Ill. 318, 68 N. E. 1087, a trolley pole on the Wentworth avenue car from which the plaintiff had alighted or was alighting, fell from that car and struck him on the head.    He had not got away in safety from the car, as the plaintiff had in this case, in which the plaintiff was not within the care and control of the defendant or on a place provided for passengers, and therefore was not a passenger.    *Illinois Central Railroad Co.* v. *O'Keefe,* 168 Ill. 115, 48 N. E. 294, 39 L. R. A. 148, 61 Am. St. Rep. 68."

So far as the majority opinion in the *Feldman Case* is

rested upon authority, it appears to have rather frail support. The case, however, is so confidently relied on by counsel for the defendant in error that some further notice of it seems proper. Feldman and another, Burke, were passengers on a street car in the city of Chicago, from which they alighted at Cicero avenue and Twelfth street. That was the end of Burke's journey, but Feldman held a transfer which he intended to use on another car and thereby continue his journey. They had safely alighted from the car to the ground, and had just cleared the car when it moved forward, but the front wheels split the switch and caused the rear end of the car to sweep to one side and strike both of them and injure them. They had reached a point five or six feet from the side of the car from which they had just alighted when they were struck. Feldman claimed to be a passenger at the time he was injured, and that his injuries were caused by the negligence of the carrier. The case was tried on this theory, resulting in a verdict for the plaintiff. On appeal to the appellate court of Illinois (212 Ill. App. 484), that court reversed the case, holding that the plaintiff was not a passenger while transferring along the public street, over which the defendant had no control. The court delivered an elaborate opinion. That court, after a careful examination of the authorities, adopted the view of the Massachusetts court in *Niles* v. *Boston Electric Ry. Co.*, 225 Mass. 570, 114 N. E. 730, hereinafter more particularly mentioned, and also approved the Tennessee case of *Chattanooga Electric Ry. Co.* v. *Boddy*, 105 Tenn. 666, 58 S. W. 646, 51 L. R. A. 885, and reversed the judgment of the trial court. The case was then carried by *certiorari* to the Supreme Court of Appeals, which reversed the judgment of the appellate court. In the opinion of Judge Holden, of the appellate court, it was said, among other things, that "to constitute a person a passenger it is necessary that such per-

son should be under the control of the carrier in order to be entitled to its care. Such passenger must be at some place provided for passengers under the control of the carrier, so that it may exercise the high degree of care exacted from it under the law.  *  *  *

"The fact that the plaintiff had a transfer and intended to pursue his journey on another car did not make him a passenger after he had safely alighted from and cleared the car on which he had been riding. Such relationship did not continue during the time he was walking upon the public highway to the car for which he had a transfer. While the plaintiff was walking upon the public highway from the car from which he alighted to the car upon which he intended to continue his journey, he was not a passenger, notwithstanding the fact that if he had reached the car for which he had a transfer and had boarded it, the relation of passenger and carrier would have been restored."

This holding accords with the Massachusetts doctrine in such cases, but probably goes further than was necessary. Under the decisions in this and other States, the case might have been safely rested by the Supreme Court on the ground that Feldman and his companion had not had an opportunity of reaching a place of safety after alighting from the car, and under such circumstances that the company should be held liable, but the majority opinion in the Supreme Court did not take this view of the case, but held generally that the plaintiff was a passenger while transferring from one car to the other. It does not appear from the report of the case whether any suit was instituted by Burke or not, but upon the theory of the Supreme Court that Feldman's right of recovery was based upon the fact that he held a transfer to another car, Burke would not be entitled to recover, although the only difference between his case and that of Feldman's was that Feldman held a transfer and he did not. Under the doctrine in this State and

other States holding the same doctrine, each would have been entitled to recover, but the recovery would have been based upon the ground that they continued to be passengers until a reasonable opportunity had been afforded them to reach a place of safety. The grounds upon which the Supreme Court rested its conclusion and the fact that there were two dissenting judges in that court, and that the majority holding was opposed by the decision of the appellate court, detracted greatly from the weight to be given to the case.

In *Pins* v. *Conn. Co.* (1917), 92 Conn. 310, 102 Atl. 595, the plaintiff was under the immediate control and direction of the conductor of the car at the time she was injured. There was a break in the line, and it was necessary for passengers to get out of the car and walk past this break in order to reach another car and continue their journey. When the car on which Mrs. Pins was a passenger reached the break, the conductor got off the car, saying, "This way, please," and led the way along the path which the passengers were to travel in order to reach the car they were to take. In making this journey under the direction of the conductor, she fell and sustained the injury complained of. It was said in the course of the opinion that "The place at which she alighted was not the terminus of her trip. She did not alight because she had reached her destination, but in order that she might reach it. She alighted when she did because she could not preceed further as the defendant's passenger without doing so, and because she was directed by the defendant's agent to do so in order that it might be enabled to carry out its contract with her and transport her to New Haven. She traveled a path under the direction of the conductor and followed his leadership and guidance. When she fell, she was doing just what she had been told to do to accomplish her trip, and was just where she had been invited and directed to be as incidental to her transportation."

It is plain from the foregoing statement that Mrs. Pins was acting under the immediate control and direction of the agent of the street car company, which was not the fact in the instant case.

*Killmeyer* v. *Wheeling Traction Co.,* 72 W. Va. 148, 77 S. E. 908, 48 L. R. A. (N. S.) 683, Ann. Cas. 1915C, 1220, is in some respects similar to the Connecticut case just reviewed, in that it appears that the passenger was acting under the direction of the servant of the defendant company. It is said by Judge Lynch, in the course of his opinion: "While there is conflict in the evidence in some respects, later noticed, it sufficiently appears that the plaintiff, about midnight on the day of the injury, was a passenger on defendant's traction lines, and as such entitled to transportation from Moundsville to Wheeling, he having paid the necessary fare for the trip. On arrival of the car at Boggs Run, an intermediate point, those in charge thereof, finding the track submerged by reason of a freshet, directed plaintiff and other passengers to alight and to proceed on foot, by a way designated by the employees, to another of defendant's cars, then, or soon to arrive, at a point on its lines beyond the obstruction, which would carry them to their destination without further charge. Finding the way so designated also obstructed, they returned to the first car, when, as the plaintiff seeks to prove, and the defendant to deny, the employees directed them to follow another course, likewise designated, in order to reach the second car, and that in following the same that plaintiff fell from a high wall and received the injury for which he seeks recovery. There is no denial that the employees directed the course first designated and abandoned." The court further said: "The evidence relating to directions by defendant, while not convincing beyond doubt, is, nevertheless, sufficiently clear to sustain the jury's finding in that respect." It would seem from these quotations that this branch of the case is

rested upon the fact that the plaintiff was acting under the immediate direction and control of the servants and employees of the street car company. The other ground upon which the decision was rested is founded upon a state of facts so essentially different from the instant case that it does not seem to require notice.

In *Wilson* v. *Detroit United Railways,* 167 Mich. 107, 132 N. W. 768, while containing general statements to the effect that a person is a passenger while transferring along a public street, the question of whether or not the plaintiff was a passenger of the company which injured him was not involved. In that case a blind man, with a transfer, was told by the conductor of the car from which he had alighted that the street was clear to the end of the line, and acting upon this advice he started across the street, but was struck by a car of a connecting line, and recovery was denied on the ground of his contributory negligence.

In *Clarke* v. *Traction Co.,* 138 N. C. 77, 107 Am. St. Rep. 526, 50 S. E. 518, the plaintiff had a transfer from one car to another. He had one hand on the rail at the rear of the car he was to enter, and one foot on the rear step of the car, and he was injured by being thrown from the car by a sudden start without warning. This state of facts is clearly within the holdings of this court in *Va. Trust Co.* v. *Raymond,* 120 Va. 674, 91 S. E. 613, and in *Virginia etc., Co.* v. *Arnold,* 121 Va. 204, 92 S. E. 925, the latter holding that a person standing at a proper place to board an approaching car and intending to board and pay his fare, is entitled to the rights of the passenger even before boarding or attempting to board the car.

In *Loggins* v. *Southern Public Utility Co.,* 181 N. C. 221, 106 S. E. 823, a young boy, holding a transfer, alighted from the car at a regular transfer point. As soon as he alighted he discovered he had left a basket in the car, and went back to get it. When he alighted from the car the

second time and had taken only one step, he was hit by a passing automobile. The company was held liable on the ground that it was the duty of the carrier to discharge the passenger in proper manner and at a proper time and place reasonably safe for the purpose. Two judges dissented. While the majority opinion contains expressions in accord with the views of the defendant in error in this case, it is distnctly held that whether a person, under a given set of facts, should be considered in law a passenger while transferring from one street car to another, although holding a transfer ticket, must be determined ultimately by the facts and circumstances attending the transfer in each particular case. In other words, in that particular case it was a question for the jury whether, under all the circumstances, the carrier had discharged the plaintiff in the proper manner and in a reasonably safe place. The question involved would really seem to be whether the plaintiff had been afforded a reasonable opportunity for reaching a safe place after alighting from the car.

It will be observed that practically all of the foregoing cases belong to one or the other of two classes. Where the passenger is boarding or about to board the car, or is alighting or has just alighted from the car and has not had the opportunity of reaching a place of safety, and in either case is injured either by the car from which he has alighted or the one he is about to board. The other class is where the passenger is within the physical control of the carrier, or the latter has undertaken, directly or indirectly, to direct the movements of the passenger. There is still a third class of cases which we have not noticed—injuries to passengers at the stations or on the platforms of commercial steam railroads. Such are *Balt. & O. R. Co.* v. *Hauer*, 60 Md. 449, and *Parsons* v. *New York, etc., R. Co.*, 113 N. Y. 355, 21 N. E. 145, 3 L. R. A. 683, 10 Am. St. Rep. 450. Such railroads own and have complete control over not only

their roadbeds, but their station platforms, yards and sid-
ings, and for these reasons stand on a different footing, in
many respects, from other railways in their relation to pas-
sengers.

[4-6] There seems to be good reason and also authority
for holding that the relation of passenger is not sustained
while a passenger with a transfer is outside of the direction
and control of the carrier and walking along the public high-
way. The reason for the high degree of care required of
carriers of persons is the tender regard the law has for
human life and limbs, and the fact that the carrier has the
selection, control, management and operation of the whole
instrumentalities of carriage, and a limited control over
and direction of the conduct of the passenger. It may make
and enforce reasonable rules for the protection of passen-
gers, but if the passenger may place himself outside of the
pale of influence of the carrier, beyond its control and di-
rection, and still retain his character as passenger, such
rules would be wholly inoperative and useless, and the car-
rier would be without means to protect the passenger from
injury, or itself from liability. A transfer ticket imposes
no liability on the carrier to make the transfer. The pas-
senger himself makes the transfer, and generally without
direction, or suggestion, from the carrier. The transfer
ticket is simply an undertaking on the part of the carrier to
continue the carriage further without additional charge if
the passenger, in accordance with its terms, again presents
himself at the proper place for carriage. It generally des-
ignates the point at which the journey is to be renewed,
but contains no contract, express or implied, for safety in
making the transfer. In the interim between leaving the
car and offering himself as a passenger on another, the
passenger is not under the care or custody of the carrier,
nor subject to his direction or control, and may be far from
the carrier's powers of observation. It would seem unrea-

sonable, therefore, to hold the carrier liable to one as a passenger during such interval.

In *Niles* v. *Boston Electric Ry. Co.*, 225 Mass. 570, 114 N. E. 730, it appears that the plaintiff held a transfer from a Watertown car to a Newton car, and that when the car on which she was riding arrived at the place of transfer, a number of passengers from Watertown car went forward to take the Newton, which was waiting. The Newton car was waiting about three car-lengths farther, on a direct line. When the Watertown car stopped, the conductor said: "All change here; all change; all change for Newton." The passengers then alighted, the plaintiff being the last one on the car, and leaving at the rear end. While she was walking along the street in the direction of the Newton car, but after she had been afforded a reasonable opportunity to reach a place of safety, the Watertown car from which she had alighted started, and, as it rounded the corner to enter the barn, struck her. The trial court left it to the jury to determine whether or not the plaintiff was a passenger, to which the defendant excepted. There was a verdict for the plaintiff to which exceptions were alleged, which exceptions were sustained by the Supreme Judicial Court. It is said in the opinion:

"In her declaration, the plaintiff alleged that while transferring from the Watertown to the Newton car, she was a passenger. The presiding judge left it to the jury to decide whether, on the fact shown, she was such, and the defendant's exceptions to this part of the judge's charge presents the only question for decision.

"The plaintiff, when injured, was not on the defendant's premises, nor at a station or platform in use for the purpose of transferring passengers and within the control of the carrier; neither was she under its direction and within its care. She was upon a public highway, where she was exposed to dangers not caused by the defendant. In passing

from one car to the other, she could go on either side of the car; she could choose her own way, and her movements were entirely under her own guidance. While so walking on a public highway and in transferring from one car to the other, as a matter of law, she was not a passenger.

"There may be cases where there is evidence to show that the carrier assumes to direct the movement of persons while upon the highway, or where such a duty rests upon it, and where the acts justify the finding that, although upon the highway, they are in the care of the carrier, and the relation of passenger and carrier exists. But there are no such facts in the case at bar.

"In *Wakely* v. *Boston Elevated Railway*, 217 Mass. 488, 105 N. E. 436, the passenger was injured while in the act of alighting from a car, by stepping into a depression. In *Powers* v. *Old Colony Street Railway*, 201 Mass. 66, 87 N. E. 192, the running of the defendant's cars was interrupted by the abolition of a grade crossing, and it was necessary for the passengers to leave the cars and go around the obstruction on foot, to take other cars in order to continue their travel. The defendant prepared a way over adjoining land for its patrons to pass. It pointed out this way to them, invited them to use it, and by so doing assumed an obligation to provide reasonably for their safety; it was held that the question of the defendant's care was for the jury. In the case of *Gurley* v. *Springfield Street Railway*, 206 Mass. 534, 92 N. E. 714, the plaintiff was upon the defendant's premises when injured. In *Thompkins* v. *Boston Elevated Railway*, 201 Mass. 114, 87 N. E. 488, the plaintiff stepped from the front vestibule of a crowded surface car to permit other passengers to alight, and was injured by the car starting when he had one foot on the step, 'and was putting up the other foot.' It was there held that he was a passenger.

"All these cases are to be distinguished from the one be-

fore us.  In none of them was the injured person a traveler on a public street.  In the case at bar there was no assumption of the duty of directing the movements of passengers, nor was there any holding itself out as a carrier of passengers in protecting the safety of those who were traveling from one car to the other.

"If the defendant was guilty of negligence, it was, of course, liable to the plaintiff; but it cannot be held to that high degree of care required of a carrier towards its passengers."

In *Finseth* v. *City & S. R. Co.,* 32 Ore. 1, 51 Pac. 84, 39 L. R. A. 517, a woman was transferring from one car to another, on a regular transfer ticket, and was injured while using a temporary passageway erected by the company for the use of its passengers over some water in the street.  It was held that, in making the transfer, there was an interruption of the relation of carrier and passenger from the moment of leaving one until the other was reached, and that the duty owing by the carrier as to the passageway was ordinary care.

*Chicago, etc.,* v. *Jennings,* 190 Ill. 478, 60 N. E. 818, 54 L. R. A. 827, was the case of a commercial steam railroad, which is required to provide safe stations and platforms for its passengers, and the question was whether the plaintiff had become a passenger.  He had a commutation ticket in his pocket.  It was held that a person with a commutation ticket, crossing the track of a railroad along a street to take a train, but who has not yet reached the station or platform provided for boarding trains, is not a passenger.

In completing this review of the cases relied on by counsel on the one side or the other, we wish to acknowledge our indebtedness to counsel for their excellent briefs and critical examination of the cases, which have greatly lightened our labors and which we have practically followed.

[7] Massachusetts and the courts of a number of other

States hold that the relation of carrier and passenger terminates as soon as the passenger alights in a public street and gets a firm foothold there. *Creamer* v. *West End Street Ry. Co.,* 156 Mass. 320, 31 N. E. 391,. 16 L. R. A. 490, 32 Am. St. Rep. 456; *Finseth* v. *Street, etc., Ry. Co.,* 32 Ore. 1, 51 Pac. 84, 39 L. R. A. 517; *Chattanooga, etc., R. Co.* v. *Boddy,* 105 Tenn. 666, 58 S. W. 646, 51 L. R. A. 885; *Welsh* v. *Spokane, etc., R. Co.,* 91 Wash. 260, 157 Pac. 680, L. R. A. 1916-F, 484; *Chesley* v. *Waterloo, etc., R. Co.,* 188 Iowa 1004, 176 N. W. 961, 12 A. L. R. 1366. But that question is not involved in the instant case, as it sufficiently appears that the plaintiff had reached a place of safety after alighting from the car upon which she took passage. Nor is such holding at all essential to the view taken in the *Niles Case.* In the *Niles Case,* as in *Ellis* v. *Virginia Ry., etc., Co., supra,* the plaintiff had been afforded reasonable opportunity to reach a place of safety, but had not availed herself of that opportunity. In the instant case, the plaintiff had reached a place of safety on the sidewalk, and then continued of her own volition to approach the place of re-embarkation in any way she saw fit. She was not in any wise under the direction or control of the street car company. Nor was any invitation, directly or indirectly, extended to her as to what route she should take. In making the transfer, she was exercising her own judgment, and was not at that time a passenger of the street railway company. She was simply a pedestrian in the street, to whom the street car company owed the same duty that it owed to other pedestrians crossing its tracks, but no greater.

Certain ordinances of the city of Richmond relating to the operation of street cars were introduced in evidence, over the objection of the defendant, and an instruction based thereon was given by the court, which was duly excepted to by the defendant. It is unnecessary to pass on the admissi-

bility of these ordinances, as the trial court expressly limited their application to a case where the jury believed from the evidence that the plaintiff was a passenger, and this limitation cannot occur on another trial.

The verdict of the jury determined the fact that the plaintiff was not guilty of contributory negligence, and that the damage sustained by her amounted to $7,500.00.

This disposes of all the questions necessary to be decided in this cause, except the question of whether or not the defendant exercised ordinary care for the protection of the plaintiff as a pedestrian in the street, upon which the evidence was conflicting. The verdict of the jury will, therefore, be set aside, and the judgment of the trial court thereon reversed, and, in pursuance of section 6365 of the Code, the case will be remanded to the trial court, with direction to enpanel a jury to determine the following question: Assuming that the plaintiff was a pedestrian in the street and not a passenger, was free from negligence and sustained damage by reason of the injury in the declaration mentioned to the amount of $7,500.00, was such injury proximately caused by the negligence of the defendant? If this question shall be answered in the affirmative, the trial court shall enter judgment in favor of the plaintiff against the defendant for the sum of $7,500.00, with legal interest thereon from May 14, 1920, till payment; if in the negative, it shall enter judgment for the defendant.

*Reversed.*