For the reasons assigned, the judgment appealed from is hereby affirmed.

---

(45 South. 943.)

No. 16,791.

PITARD v. NEW ORLEANS RY. & LIGHT CO.

(Feb. 17, 1908. Rehearing Denied March 16, 1908.)

1. CARRIERS — CARRIAGE OF PASSENGERS — TAKING UP PASSENGERS—PERSONAL INJURY CASE.

Plaintiff sought to get aboard of one of defendant's West End trains, made up of a motor car and trailer. In the attempt, he was thrown down, bruised, and wounded.

2. SAME—SIGNALING CAR TO STOP—PLACE OF SIGNAL.

A person who gives the signal to the motorman to stop should stand at or reasonably near the place at which it is usual to stand in order to hail the car.

3. SAME—THE MOVING TRAIN.

The motorman and conductor are not held to the necessity of seeing with the view of stopping for those who give the signal while the train is running.

4. SAME—CONTRIBUTORY NEGLIGENCE—BOARDING MOVING CAR—ASSUMING RISKS.

It is not negligence to board the car while it is in motion. Those who do it assume some risks which must be taken into account if an accident happens.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, § 1369.]

5. SAME—GETTING ON TRAILER.

There is greater danger in getting on a trailer of a train than on the cars in front; at the moment that the rate of speed is increased it (the trailer) oscillates from one side to the other, and has a backward and forward motion that renders it more difficult for the one attempting to board to hold on. It is a dead weight, and its movements are not generally as regular as those of the motor car to which it is attached.

6. SAME—SLOWING DOWN.

The train slowed down as usual at one of the large avenues. The act of the passenger in getting on at this time is not considered in the same light as if the attempt had been made at the crossing where the car stops when hailed.

7. SAME—MOTORMAN AND CONDUCTOR.

The testimony does not show that the motorman or the conductor saw the plaintiff at the time that he made the attempt to get on. Had it been at the stopping place it would have been different, for then it would have been an important duty to see the passenger when he hailed, and when he attempted to get on.

8. SAME — PLEA OF CONTRIBUTORY NEGLIGENCE — SUFFICIENCY — PLEA OF NEGLIGENCE.

The allegations were sufficient to admit testimony.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; John St. Paul, Judge.

Action by Daniel M. Pitard, for personal injury, against the New Orleans Railway & Light Company. Judgment for defendant and plaintiff appeals. Affirmed.

On opposite page is the sketch referred to in the opinion.

Stafford, Lambert & Robinson, for appellant. Dart & Kernan, for appellee.

BREAUX, C. J. Plaintiff was injured while attempting to get on board of one of defendant's cars.

For the injury alleged he claims damages in the sum of $21,158.

The place of the accident was Canal street near the corner of Hagan avenue in this city. The time was the 29th day of September, 1906, between the hours of 5 and 6 p. m., nearer 6.

In attempting to board the train the plaintiff grasped with his right hand the handle bar of the rear platform of the last or second car.

The train was made up of one coach and trailer. It was one of the West End trains.

At the moment that plaintiff was attempting to board the car (he stepped to and on the lower step, but did not succeed in getting to the upper or second step), the car started with a jerk. He was thrown with force against the step of the car, and carried several feet, when he lost his footing entirely, and was thrown violently to the ground.

Plaintiff's account is that when he attempted to step on to the car it was running slowly, and had come near to a standstill, but instead of stopping it suddenly started again, causing the jolt before mentioned, which resulted in throwing him off.

The proof shows beyond question that he received very painful injuries; a terrific contusion of the right knee, from which, we are informed, he had not entirely recovered. He still feels the painful effects. He was conveyed to his home and confined to his bed for many weeks; received medical attention; and after leaving his bed he was confined to his home for a number of weeks.

Defendant denies liability, and charges that plaintiff's negligence was the cause of the injury, and that he has no one to blame for it but himself; that he was imprudent in attempting to board a train while in motion.

We will state at the outset the city of New Orleans through its counsel has adopted rules. They direct the company to stop its cars on Canal street at Carrollton and again at Hagan avenue. As to the latter place, the cars are to stop only when hailed to get on or when passengers wish to get out of the cars.

The ordinance provides a punishment in case an employé violates this ordinance. He is subject to a fine or imprisonment.

Plaintiff in this instance hailed the car, but it is by no means certain that the motorman saw him.

A disputed point of some importance is whether plaintiff was standing at the head of the crossing on the river side of Hagan avenue, or about midway between the wood side crossing and the river side crossing.

Plaintiff in his petition avers that he was standing at the proper place; that is, at the river corner of Canal and Hagan avenue on the right of the West End track.

But the witnesses do not agree as to the place at which he was. There are witnesses who state that it is as averred in his petition; that is, at the river side crossing.

But plaintiff testified that he was standing about the point indicated by the figure 2 on the sketch annexed. He is certainly the best judge, and knows best where he was standing.

We accept his statement. Of course, as he states he was at the point "2" he could not have been at the place marked "1" on the plat annexed, where the petition alleges he was. It follows then that he was standing about midway of Hagan avenue.

This avenue is said to be the widest in the city of New Orleans.

It was at that place that plaintiff hailed

1—Spot where petition places plaintiff.
2—Spot where he swears he mounted car.
3—Plaintiff's residence.
4—Hathorn's Grocery.

the car. At that distance from the stopping place of the car, it cannot very well be taken as sufficient notice to stop for a passenger.

It is not arbitrary to expect that one who comes up to be a passenger on the car shall stand at or near the usual place at the crossing. The motorman and others in charge of the train are expected to be very attentive and alert in noticing persons on the way who wish to board their train at the different stopping places. If they could be signaled from other places to stop it would divert them from the attention due to the different places at which they are regularly called upon to stop. They cannot be expected to heed signals from other places on the road. It would interfere with the running of the trains and cars.

We do not wish to be understood as holding that persons hailing the cars should stand at a particular spot, but we do hold that they should be within reasonable distance of the stopping place.

Plaintiff, in a street of about 200 feet in width across which the car was running, was standing about midway between the two crossings before mentioned. From that point of view he was not sufficiently near to give the signal to the approaching train to stop. Plaintiff must have been about 100 feet from the stopping place.

The testimony of plaintiff, and that of other witnesses who testified in his behalf, does not fix upon the motorman the fact that he saw the signal.

As plaintiff was standing at the distance before mentioned from the proper place, it cannot very well be held negligence if the motorman did not see the signal, although it was given.

It is negligence in the carrier to start the car before a passenger is safely aboard. This is a correct and useful rule invoked by plaintiff. But it is not evident that plaintiff in his attempt to become a passenger acted so as to entitle him to damages. It

does seem that he was somewhat hasty, and it does appear that he was imprudent in attempting to board the trailer, which because of the fact that it is a dead weight, pulled by the motor car oscillates from side to side, and in the movements after having slowed up a little to start again it jolts and jerks to and fro.

It will be stated here that the West End trains under requirement of the management must slow up at Hagan avenue, and they are kept in hand in order to stop if any one hails.

At the time of the accident evidently the train had slowed down, and in starting again the jolt and jerks were felt.

Plaintiff's position is that the train had entirely slowed down, and had about come to a stop when he stepped on and met with the painful accident.

That inference is not sustained, as we understand, if it be plaintiff's theory that the train was stopping to let him get on board. Neither the motorman nor the conductor saw him at all, as they testified, and as the facts and circumstances show.

It is not negligence for a passenger to board a slowly moving electric car. This was in effect one of the statements in Jones v. Canal & Carondelet R. R. Co., 109 La. 213, 33 South. 200, cited by plaintiff.

This decision refers to a number of authorities.

The facts of the cited case have some similarity to those of the case here.

Passengers get on the cars while in motion. It is said that this getting on the cars by passengers should be looked upon with favor because it promotes rapid transit; otherwise, it is further said there would be a tedious loss of time.

That is true to a certain extent, but jumping on the cars to obviate this delay should not be carried too far; it should never be done unless the person is reasonably certain that he can get on. The necessity for rapid transit, however great, is not excuse for impru-

dence. Rashness may be fatal, and, while it always occasions feeling for suffering, it does not necessarily afford ground for damages.

The other decisions cited by learned counsel for plaintiff have received careful attention at our hands. He stated in substance, in oral argument, that the weakness of his case was the jury's finding; for, as he contended, the facts warranted a favorable verdict for plaintiff, which was not found.

The earnest, clear statement of counsel arrested attention. The facts were closely examined into. They do not make up a case for damages.

The premises upon which our decision is predicated are:

First. Signal was not given by plaintiff at the proper place.

Second. The proof does not sustain the proposition that the motorman saw the signal.

Third. The car had not moderated its speed to let the plaintiff get on.

Fourth. It had slowed up its run as usual and as is required when passing the avenue.

Fifth. The jolts and jerks were unavoidable in starting anew after having moderated its speed for the purpose before mentioned, and under the circumstances the plaintiff has no ground for complaint and damages.

Before concluding, we will consider another point urged on behalf of plaintiff.

The ground was that the contributory negligence as pleaded was not a complete plea in that it did not fully state grounds.

We will here state that the plea was made. It was specially averred that there was negligence in matter of each item for which plaintiff claims the right to recover. This was ample enough. There would have been necessity for a full, detailed plea of negligence if defendant had relied upon some separate facts other than those at issue under plaintiff's petition. Here the answer, as re-

lates to negligence, was intended to, and did, meet every allegation of plaintiff to an extent needful to a complete defense on that score.

For reasons stated, the judgment is affirmed.