Plaintiff instituted this suit against D.R. Duke and S. Carl Paulus, operators of busses in regular use by the City of Monroe in its proprietary capacity, and against the city also, to recover damages for injuries which she alleges to have sustained while attempting to board one of these busses. She alleges that she boarded the city's DeSiard Street bus, operated by Duke, and purchased a ticket which entitled her to transfer to a Jackson Street bus at the intersection of that street with DeSiard Street; and that when the bus reached the intersection the Jackson Street bus, with Paulus as operator, was waiting at the curb on that street, facing south; that Duke informed her that she might catch it if she hurried; that she hurriedly crossed DeSiard Street, approached the waiting bus from its rear or north end and rapped on its right side with her left hand to apprise the operator of her presence and of her desire to board it; that she continued along side of the bus toward the front end where the doors are located; that before reaching the entrance the doors closed and she again struck the bus' side to attract the attention of the operator; that simultaneously therewith the bus pulled away from the curb, and: "* * * before your petitioner's hand could be withdrawn from the bus, thus causing your petitioner to fall forward and outward partly into the street and on the sidewalk as a result of which she sustained injuries * * *."
Each defendant filed exceptions of no cause and no right of action. Plaintiff appealed from judgment sustaining the exceptions.
Operator Duke is charged with the following acts of negligence:
1. Encouraging and advising petitioner to hurriedly proceed to the bus on Jackson Street when he knew or should have known that the bus might start without giving her a fair opportunity to board it;
2. That he did not sound the gong nor otherwise give signal or notice of his arrival at the intersection so that his bus' presence might be observed by Paulus, the other operator; and the failure to notify Paulus that passengers on his (Duke's) bus, including petitioner, desired to transfer.
These charges of negligence are wholly without merit. It is certainly not negligence for a bus or trolley car operator to suggest to a passenger that if he would hurry he might probably catch another waiting bus or trolley. The very fact that the passenger is advised to hurry implies that the waiting bus would start off at any moment. And, it is not to be assumed that such operator knew or should have known that the waiting bus would move away before the passenger had time to board it. The suggestion to plaintiff negatives such an inference in his case.
It would be a very impractical rule that would devolve upon the operator of a passenger bus or trolley car in a populous city, on arriving at an intersection burdened with heavy traffic of all sorts, to hold his bus or car at stop until operators of waiting busses or cars could be notified of his presence and of the fact that passengers wished to transfer. As a rule, at such intersections, busses or cars pass so frequently that to miss one involves only a few minutes' delay to catch another.
When Duke safely unloaded plaintiff at the intersection he completely discharged to her, so far as he was concerned, the exacting duties resting upon his employer, the city, as common carrier; and this, too, notwithstanding he knew that the transfer entitled her to ride on the other bus.
Eleven distinct acts of negligence are charged to operator Paulus while the city's dereliction is covered into seven different paragraphs. If the city can be made to respond in damages to plaintiff, its liability must arise from the negligence of its operators. We have disposed of the charges against Duke. If Paulus was not negligent in that he did not breach a duty due to plaintiff, of course, the city cannot be held in damages.
The gravamen of Paulus' alleged negligence is that he should have seen plaintiff by the side of the bus or heard the sound produced by her raps against its side, or heard a colored passenger hollo that she was approaching and desired to get aboard, and held the bus for her to board it; that before starting the bus he should have peered without the doors to ascertain if there were prospective passengers approaching; that he should have given notice or signal of his intention to start off; and did not allow a reasonable time to elapse, after the arrival of the DeSiard Street bus, to enable passengers to alight, *Page 85 
cross the street and board the Jackson Street bus.
Plaintiff's petition is obviously vulnerable in that it does not unequivocally allege that Paulus was aware of her presence and from her actions should have known that she wished to take his bus. This being true, all of the allegations of negligence directed to him fall of their own weakness. The fact that he did not see her nor hear her striking the side of the bus nor hear the words of the negro passenger is easily accounted for. The operator's duty requires him to occupy the driver's seat behind the steering wheel and receive fares from entering passengers. As it was nighttime, his ability to perceive conditions at the side and to the rear of his bus was not so good as it would have been in the daytime. Doubtless many pedestrians were on the sidewalk by the bus' side going in both directions and the presence of persons going and coming did not unduly attract his attention.
No duty rests upon an operator of a passenger bus or trolley car to leave his seat and protrude his head through the doors thereof to determine if there are other persons near by who desire to get aboard. So far as relates to notice to persons outside of the intention to start the bus, the closing of the doors, it seems to us, should be most impressive. Plaintiff admits the doors were closed before she reached them, yet she persisted in her efforts to gain passage.
The case of Pitard v. New Orleans Railway Light Company,120 La. 925, 45 So. 943, 945, in some respects is analogous to the case at bar. In that case the court found that the plaintiff was standing in the middle of the block, one hundred feet from the proper place to board a car. At this point the plaintiff hailed an approaching car. The car had slowed up as it was required to do on the corner and then had started forward anew. The plaintiff attempted to board the moving car and was dragged a short distance and then thrown to the ground, causing the injuries for which he sued. The court held that at this distance from the proper place to board the car the hailing could not be held to be sufficient notice to the conductor to stop for a passenger and disallowed recovery. Part of the language used by the court in that case refusing recovery is as follows:
"We do not wish to be understood as holding that persons hailing the cars should stand at a particular spot, but we do hold that they should be within reasonable distance of the stopping place.
* * * * * *
"As plaintiff was standing at the distance before mentioned from the proper place, it cannot very well be held negligence if the motorman did not see the signal, although it was given."
Some of the grounds listed by the court in arriving at its conclusion are as follows:
1. Signal was not given by the plaintiff at the proper place;
2. The proof does not sustain the contention that the motorman saw the signal.
In both the Pitard case and the case at bar the plaintiff signalled at a point from which it was not likely the driver would see or hear him. In the former case, the plaintiff was in the middle of a block, while in this one, the plaintiff was at the rear and to the side of the bus. In the Pitard case it was held that the motorman did not see the plaintiff signal, while in the present case, as said before, it is not alleged that the operator saw or heard the plaintiff.
In another case involving somewhat similar facts, Perkins v. New Orleans Railway Light Company, 127 La. 177, 53 So. 484, the court refused recovery. In that case the court found that the plaintiff was on the wrong side of the street to hail the car and that he ran across the street and around the car from the rear; that he grabbed the handle bar at the same time that a signal was given that the car was going to start, and that he held on after the car had started and was finally thrown to the ground. The court held:
"The jury was clearly right in not finding the defendant company liable under these circumstances. The conductor not having seen plaintiff, and plaintiff not having been in a position where the conductor ought to have seen him, the not waiting for plaintiff to get on the car was not negligence."
Though there was the added factor of the signal previous to the moving of the bus in the Perkins case, the court there did not emphasize this point but placed the greatest stress on the fact that the driver at no time saw the plaintiff. However, if the signal be held important in that case, the closing of the front doors in the present case, the significance of which plaintiff understood, may be treated as of equal importance. *Page 86 
Plaintiff strongly urges that the holder of a transfer ticket should be considered in the same light as a passenger and was therefore entitled to a greater degree of care than a mere prospective patron. In the only case in Louisiana jurisprudence in which this question has arisen, John W. Carey v. New Orleans Public Service, Inc., 3 La.App. 217, the court disposed of this contention, stating:
"We have not been referred to any authority, nor have we been able to find any, in support of this contention. We cannot take such a view of this case which, in our opinion, fails to establish any negligence whatever against the carrier."
There are cases from other jurisdictions which hold that while transferring from one car or bus to another, a passenger's status as such subsists. But in these cases, so far as our search reveals, the transfer was made on the premises of the carrier; that is, in the same station or depot, etc., and not from one part of a city to another, nor from one street to another, which necessitated quitting the carrier's premises. Simply because a passenger is given a transfer entitling him to ride free on another car of the carrier does not, in all circumstances, continue his status as passenger. He may not use the transfer for several hours and to do so he may have to employ intervening transportation to a part of the city remote from that where transfer is given.
To avail herself of the transfer, plaintiff had to cross the crowded intersection and travel down another street to where the other bus was stationed. The route between the busses did not in any sense form a part of the city's transportation system. It is open to the equal use of all persons. To hold that while traveling this distance plaintiff was due the same high degree of care and protection from the city as was due her while a passenger, would be tantamount to saying that the city became her insurer and guaranteed to her safe transit from one bus to another. It is our conclusion that from the moment plaintiff alighted from Duke's bus until she was injured she was the guardian of her own safety.
Defendants lastly contend that the exceptions are well founded because plaintiff's own allegations convict her of negligence contributing proximately to the accident which befell her. We are of the opinion that this position is well taken.
We do not know certainly why plaintiff fell unless when the bus moved forward her weight was against it or she was attempting to board it at a place other than the front entrance. Surely the mere contact of her hand with the bus' side would not cause her to fall when it started off. She lost balance, seemingly, and according to her allegations fell "forward and outward, partly into the street and on the sidewalk." To do this, it seems to us, she must have been hanging to the bus in some manner. She knew the bus would likely depart at any moment. The closing of the doors when she was several feet away, should have impelled her to act more cautiously for her own safety.
It is not negligence invariably for one to alight from or board a bus or car while in slow motion. The facts of each case must be considered. In the present case, since plaintiff knew the operator was not cognizant of her presence, it would have been the height of imprudence to attempt to board the bus after it started off.
It is our opinion that the petition discloses neither a right nor a cause of action for the reasons herein assigned. Therefore, the judgment appealed from is affirmed with costs.