DANIEL PATTERSON v. DUKE POWER COMPANY AND C. B. COX.

(Filed 31 January, 1946.)

**1. Carriers § 15—**

Ordinarily a passenger who has obtained a transfer and has safely alighted from one urban bus with the intent to transfer to another is not a passenger while traveling on the public street for the purpose of making the transfer, so as to impose upon the carrier the duty to protect him from the hazards of the street.

**2. Same—**

When a person attempting to transfer from one urban bus to another reaches the second bus as the driver shuts the door, knocks to attract the driver's attention, but receives no recognition of his signal, the relationship of carrier and passenger is not resumed, since he had not entered the premises of the carrier, had done nothing to entitle the carrier to demand the surrender of his transfer and the carrier had done nothing to indicate his acceptance as a passenger.

**3. Carriers § 21c: Nonsuit held proper in this action by person injured while attempting to transfer from one urban bus to another.**

The evidence disclosed that the plaintiff, attempting to transfer from one urban bus to another along a city street, approached the second bus as the driver closed the door, knocked on the door to attract the driver's attention with one hand resting on the bus, that the bus moved off and then gave a sudden lurch causing plaintiff to fall, resulting in injury when plaintiff was struck by the rear wheel. Plaintiff contended that the defendant was negligent in overcrowding the bus so as to prevent the driver from seeing whether additional passengers were attempting to board by merely turning his head. *Held:* There was no causal connection between the alleged overcrowding and the accident, and after the driver shut the door and started the bus, thus indicating that the bus was taking on no more passengers, his duty was to give attention to traffic, and the sudden jerk of the bus to enter the stream of traffic breached no duty owed plaintiff, nor was the driver, in absence of notice, required to foresee that plaintiff would place his hand on the bus and follow it out into the street, and therefore defendant's motion to nonsuit should have been allowed.

APPEAL by defendant from *Clement, J.,* at June Term, 1945, of GUILFORD.

Civil action to recover damages for personal injuries.

On or about 1 May, 1944, plaintiff boarded one of defendant's electric passenger trolleys at a point on East Market Street in Greensboro for the purpose of going to Freeman Mill Road. In order for him to complete his trip, it was necessary that he transfer to another bus at the intersection of Market and Elm Streets. He paid his fare and received from the motorman a transfer ticket. When he reached the point of

transfer, he alighted from the East Market Street trolley, crossed West Market Street and walked along Elm Street to the point where the Freeman Mill bus was waiting, with the intent to board said bus and complete his trip. He had his transfer—good only for continuous passage on first connecting car or bus from transfer point—in his hand.

Just as he walked up to get on the bus, the door closed. He put his hand on the side of the bus and began to knock on the bus to attract the attention of the driver. The bus was then moving off. The plaintiff made one step into the street, the bus suddenly jerked, and plaintiff lost his balance and fell so that the rear wheel of the bus ran over and broke his right leg.

In respect to his attempt to attract the attention of the driver he testified in part:

"I knocked pretty loud. I knocked two times and then he started moving off, that is when I knocked hard. When the door went to I had one foot on the curb and my left hand on the side of the bus. It threw me back when it made a sudden jerk . . . I was on the sidewalk when the door closed . . . I had my hand resting on the sill and knocked on the door with my right hand . . . I stepped out into the street as the bus moved off, and I made one step and knocked the second time . . . It started moving off and I knocked hard, and it moved off and that is what threw me with a sudden jerk."

Issues were submitted to and answered by the jury in favor of the plaintiff. From judgment on the verdict the defendants appealed.

*Armistead W. Sapp for plaintiff, appellee.*

*W. S. O'B. Robinson, Jr., and R. M. Robinson for defendants, appellants.*

BARNHILL, J. Did the court below err in overruling defendant's motion to dismiss this action as in case of nonsuit, entered at the conclusion of the evidence for plaintiff and duly renewed at the conclusion of all the testimony? This is the one question defendant seeks to present on this appeal.

The plaintiff makes these specific allegations of negligence:

(1) The operator of the bus permitted his bus to be overcrowded;

(2) He was unable to see clearly to his right to ascertain whether or not additional passengers were attempting to get on the bus or were in the vicinity of the bus without leaning forward or backward or making some effort other than simply turning his head;

(3) He, without ascertaining whether or not plaintiff was standing by his bus and without investigating the knock on the door, drove his

bus from the loading station in a rapid, careless, heedless, and reckless manner; and

(4) The driver, before the entire bus had left the curb, started in such manner as to cause the bus to lunge forward and causing the side of the bus to strike the plaintiff.

How the unlawful overcrowding of the bus, if such be the case, could cause the injury complained of we are unable to perceive. Nor can we comprehend that plaintiff has cause to complain because the motorman declined to accept additional passengers on a bus already filled beyond lawful capacity.

The plaintiff's theory of his cause of action as developed in the court below and as presented here, in fact, is bottomed upon the theory that he, while transferring from one bus to the other, was a passenger for whose safety and protection defendant was required to exercise a high degree of care, and as he was injured, while a passenger, by defendant's own bus, defendant is liable.

Ordinarily the relationship of carrier and passenger terminates when the carrier discharges a passenger in a place of safety at the destination contracted for or designated by the passenger. *Loggins v. Utilities Co.,* 181 N. C., 221, 106 S. E., 822; *White v. Chappell,* 219 N. C., 652, 14 S. E. (2d), 843. Does this rule apply when the passenger has applied for and obtained a transfer which entitles him to board another bus at the transfer point without additional charge, or is he a passenger while passing across and along the public street for the purpose of reaching the second bus?

The great weight of authority is to the effect that a passenger on a steam railroad train, making a necessary transfer from one car or train to another, as a part of one continuous trip, does not lose his status as a passenger while making the transfer.

These cases are bottomed on facts and circumstances which bear directly upon the status of the passenger during all stages of his journey. He is traveling to a destination specified on the ticket—the contract of carriage. The necessary transfer was within the contemplation of the parties at the time of the making of the contract. He goes from one car or one train to the other on company property, using the facilities furnished for passengers. The carrier has complete control of its roadbeds, stations, platforms, and yards. It has the selection, control, management and operation of the whole instrumentalities of carriage and at least a limited control over and direction of the passenger.

Manifestly it would be unjust and unreasonable to apply those decisions as controlling here without a careful appraisal of the carriage by urban streetcar or bus companies as distinguished from that by utilities

which operate on their own property under contracts of carriage from one specified point to another.

The very nature of the services rendered by such urban companies makes it impossible for them to maintain depots, stations, platforms, or grounds for the reception and discharge of passengers. Of necessity they accept their passengers from and discharge them on the sidewalk and street corner over which they have no control.

A passenger on a city bus does not buy transportation to a particular destination. He pays his fare and may ride to the terminus of the bus route or he may alight at any regular bus stop. At his option he may have, upon request, a transfer or pass ticket which entitles him to embark on some other connecting bus traveling a different route and complete his journey to some part of the city not served by the original bus. For this transfer there is no additional charge and it is usable, within a specified time, at the option of the holder.

A transfer ticket such as the one issued here imposes no liability on the carrier to make the transfer. The passenger himself at his election makes the transfer, traveling the course of his own choosing in the manner best suited to his own desires, without direction or suggestion from the carrier. In so doing he is traveling on the public streets where he has a right to be independently of his possession of a transfer.

In the interim between leaving one car and offering himself as a passenger on another he is just another member of the public, wending his way to a particular destination for a particular purpose—to find and board a bus going his way. He is outside the direction and control of the carrier on the public highway over which the bus company has no control and he is not using any of the facilities furnished for passengers. Instead he is exercising his right as one of the general public.

On the question whether, under such circumstances, the holder of a transfer, while going from one bus to another, is a passenger within the meaning of the law which exacts of the carrier a high degree of care for his safety, there are many *dicta* but comparatively few decisions. In many instances courts have said he is a passenger when in fact decision rested on some other ground.

A careful examination of these decisions discloses that the plaintiff (1) had just alighted from the bus without opportunity to reach a place of safety, or (2) had boarded or was in the act of boarding the second bus, or (3) was at the station or on the platform of the carrier, or (4) the carrier had undertaken directly or indirectly to control the movements of the plaintiff. (For a careful and interesting analysis of some of these decisions see *Va. R. & Power Co. v. Dressler,* 111 S. E., 243, 22 A. L. R., 301.)

Still others are bottomed squarely on the conclusion that plaintiff was a passenger while passing from one bus to the other. Decision, however, is based on particular circumstances taking the case out of the general rule. In *Sowash v. Traction Co.,* 188 Pa., 618, a portion of track was torn up so that the streetcar could not continue on its regular course. As a consequence passengers were transferred to another bus beyond the break in the track. It was held that while being so transferred they retained their status as passengers. In *Powers v. Old Colony St. Ry. Co.,* 87 N. E., 192 (Mass.), interruption of the passage of the streetcar by work abolishing a grade crossing necessitated the transfer. Here it was held that during the transfer under the direction of the company plaintiff did not lose his standing as a passenger.

Giving full consideration to these and like decisions, we are of the opinion that sound reason compels the conclusion that ordinarily a passenger who has obtained a transfer and has safely alighted from one bus with the intent to transfer to another is not a passenger while traveling on the public street for the purpose of making the transfer, so as to impose upon the carrier the duty to protect him against the hazards of the street. This conclusion is supported by well-reasoned decisions from other jurisdictions. *Pugh v. City of Monroe,* 6 So. (2d), 83 (La.); *Coyle v. St. Ry. Co.,* 173 N. E., 586 (Mass.); *Perkins v. New Orleans Ry. & Light Co.,* 53 So., 484 (La.); *Cory v. Public Service, Inc.,* 3 La. App., 217; *Chattanooga Electric Ry. Co. v. Boddy,* 58 S. W., 646; *Niles v. Boston Elev. R. Co.,* 114 N. E., 730; *Va. R. & Power Co. v. Dressler, supra; Klovedale v. Ohio Public Service Co.,* 6 N. E. (2d), 995.

"The fact that plaintiff had a transfer and intended to pursue his journey on another car did not make him a passenger after he had safely alighted from and cleared the car on which he had been riding. Such relationship did not continue during the time he was walking upon the public highway to the car for which he had a transfer. While the plaintiff was walking upon the public highway from the car from which he alighted to the car upon which he intended to continue his journey, he was not a passenger, notwithstanding the fact that, if he had reached the car for which he had a transfer, and had boarded it, the relation of passenger and carrier would then have been restored." *Va. R. & Power Co. v. Dressler, supra.*

Hence plaintiff is not entitled to recover on the theory that defendant failed to furnish him protection against the hazards of the street. Under such circumstances the defendant owed him no duty it did not owe to all others on the sidewalk or in the street.

The carrier-passenger relationship had not been resumed at the time plaintiff was injured. He does not assert that he had actually boarded the second bus or that he was in the act of so doing at the time he was

injured. Instead he alleges: "Just as I reached the front door of the bus, the driver . . . shut the door." Thereupon plaintiff "then stepped to the door and knocked loudly enough for the driver to have easily heard him had he been giving proper attention to the care and safety of passengers rightfully occupying or desiring to occupy his bus." He had not entered upon the premises of the carrier and had done nothing which entitled the carrier to demand of him the surrender of his transfer ticket or the payment of an additional fare, or in any way control his actions.

A streetcar company owes no duty as a carrier to one who intends to take the car as a passenger until the prospective passenger has received some recognition from the motorman in answer to his signal for that purpose. *Keiger v. Utilities Co.,* 199 N. C., 786, 155 S. E., 875, Anno. 75 A. L. R., 285.

To create the carrier-passenger relationship off the premises of the carrier one must do some physical act in regard to boarding the vehicle such as an attempt to enter, or his intention must be communicated to the carrier's agent in charge when the physical chance of boarding may be accomplished with safety to both parties. *Klovedale v. Ohio Public Service Co., supra.*

The relation is in force when one, intending in good faith to become a passenger, goes to the place designated as the site of departure, at the appropriate time, and the carrier takes some action indicating his acceptance as a passenger. *Sanchez v. Pac. Auto Stages,* 2 Pac. (2d), 845 (Cal.). See also *Moss v. Mason City & Clear Lake R. Co.,* 251 N. W., 627 (Iowa); *Chesley v. Waterloo R. Co.,* 176 N. W., 961 (Iowa).

This is not a case where the plaintiff "had his foot on the step." *Clark v. Traction Co.,* 138 N. C., 77; *Tompkins v. Boston Elev. Ry. Co.,* 87 N. E., 488 (Mass.). Here the door closed as the plaintiff approached, giving clear notice that the bus was taking on no more passengers. No actual effort was made to get aboard and the desire to do so was not communicated to the driver at a time when it could be done in safety or while the bus was open for the reception of passengers.

*Pugh v. City of Monroe, supra,* is substantially on all fours. There as here plaintiff held a transfer and had reached the bus and was knocking on it in an attempt to attract the attention of the driver. The bus moved off while the plaintiff had her hand on the bus, causing her to fall and receive injuries. The Court said:

"Plaintiff's petition is obviously vulnerable in that it does not unequivocally allege that Paulus (the driver) was aware of her presence and from her actions should have known that she wished to take his bus. This being true, all the allegations of negligence directed to him fall of their own weakness."

Having shut the door and started his bus, it was the primary duty of the driver to give his attention to approaching vehicles so that he could enter the line of traffic with safety to his passengers. The sudden jerk of the bus as it speeded up breached no duty defendant owed the plaintiff. Nor was defendant's driver, in the absence of notice, required to foresee that plaintiff would place his hand on the bus and follow it out into the street in an attempt to attract his attention. Such prevision is not exacted by the law. *Tysinger v. Coble Dairy,* 225 N. C., 717.

The plaintiff's injury was most unfortunate. Whether it was the result of his own negligence or was just a regrettable accident we need not say. In any event he has failed to offer evidence tending to show that it was proximately caused by the negligent or wrongful conduct of the defendant. Hence the court erred in denying the motion to dismiss as in case of nonsuit.

Reversed.