**Theodore Rotheli, Appellant, v. Chicago Transit Authority, Appellee.**

**Gen. No. 46,368.**

First District, Third Division.
February 23, 1955.
Released for publication April 6, 1955.

David P. Krasner, of Chicago, for appellant; Charles Wolff, and Charles T. Shanner, both of Chicago, of counsel.

Thomas C. Strachan, Jr., James O. Dwight, Arthur Donovan, and Paul Denvir, all of Chicago, for appellee.

MR. JUSTICE LEWE delivered the opinion of the court.

Plaintiff appeals from a judgment entered in favor of the defendant on a verdict of a jury in an action to recover damages for personal injuries alleged to have been sustained by him when he was alighting from defendant's bus on which he was a passenger.

About ten o'clock p. m. on October 2, 1949, plaintiff, on his way home from his place of employment, boarded a trolley bus going east on Montrose avenue at the intersection of Kildare avenue in the City of Chicago. He paid his fare, received his transfer, and intended to alight at the intersection of Lincoln avenue "to take the Lincoln Avenue streetcar that takes me right to my home." When the bus reached the intersection of Lincoln avenue plaintiff walked to the front exit doors on the right side of the bus. He testified that when the exit doors opened another passenger in front of him got off; that he "had one leg on the ground and one on the step" as both doors closed striking his left shoulder; that at the same time the bus moved

eastward, throwing him upon the ground alongside of the bus, and that the front wheel of the bus ran over both of his feet.

The bus driver, Theodore Pokoyfka, who had severed his connection with the defendant sometime before the trial, was called in behalf of defendant. He testified that when the bus stopped at the intersection of Lincoln avenue there was "no space at all" between the exit doors of the bus and the curb of Montrose avenue; that plaintiff was the only passenger who alighted from the bus at the intersection; that plaintiff stepped from the bus onto the sidewalk; that when the traffic signal light turned green the witness closed the door and started the bus in motion, and that when the bus started plaintiff was standing on the sidewalk facing north about two or three feet south of the bus door. After plaintiff was struck the bus traveled five or six feet.

The testimony of Pokoyfka was substantially corroborated by two passengers, Harry McNaughton who testified he was seated in the first seat on the right side of the bus next to the window, and Evelyn Naessens who said she occupied the second seat on the right side of the bus at the time the plaintiff alighted.

Plaintiff contends that the verdict of the jury is against the manifest weight of the evidence. We think this contention is without merit. The defendant's theory of the case is that the bus stopped and permitted the plaintiff safely to alight and that thereafter, while plaintiff stood on the public sidewalk facing the bus, it started in obedience to the traffic signals, and that the plaintiff stepped off the sidewalk and into the side of the moving bus.

■ Plaintiff's case rests solely on his own testimony. The defendant's witnesses, the bus driver, Pokoyfka, and the passengers, Naessens and McNaughton, appear to be disinterested witnesses. They all testified that the plaintiff had left the bus and was

192

standing on the public sidewalk facing north opposite or near the exit door of the bus when it started eastward. We think that the jury could find that the plaintiff came in contact with the side of the moving bus after he had reached a place of safety on the sidewalk without negligence on the part of the defendant.

Plaintiff insists that the trial court committed reversible error in giving defendant's instruction number 16, which reads:

"You are instructed that if you find from the evidence that the plaintiff had fully alighted from the defendant's bus and had reached a place of safety before he was injured, the relationship of passenger and carrier ceased to exist between defendant and plaintiff. Then you are instructed as a matter of law under these circumstances, the operator of the bus in question was only required to exercise toward the plaintiff ordinary care, and ordinary care is such care that a person of ordinary prudence would exercise under the same and similar circumstances."

In support of his position plaintiff relies strongly on Feldman v. Chicago Rys. Co., 289 Ill. 25 (1919). In that case Feldman and Burke were passengers on a southbound Cicero avenue streetcar. They alighted on the north side of 12th street where the car came to a full stop. A switch extended from the west side of the southbound track on Cicero avenue to the north side of the westbound track on 12th street. The front trucks of the Cicero avenue car had passed south of the switch before the car stopped. Feldman and Burke left the car and started for the southwest corner of the intersection. Burke had finished his journey when he left the car but Feldman intended to ride east on 12th street. When Feldman reached a point five or six feet west of the car near the north crosswalk of 12th street the car from which he had alighted was started by the motorman. Instead of going south, the rear end of the car suddenly swung around to the west so that the end of

the car almost touched the west curb of Cicero avenue, striking both Feldman and Burke. The court said, at page 33:

"While the holdings of the courts of this country have not been uniform upon this question, notably those of Massachusetts and Tennessee holding that the relation of carrier and passenger ceases where one alights from a car in a public street for the purpose of transfer, (Creamer v. West End Railway Co., 166 Mass. 320; Chattanooga Railway Co. v. Boddy, 105 Tenn. 666); we are of the opinion that the weight of authority in this country sustains the view that where, as here, a passenger who is making a continuous journey alights from a street car for the purpose of making a transfer, the relation of carrier and passenger continues while he is in the necessary act of making said transfer, and that if he be injured through the negligence of the carrier while making such transfer the carrier is liable."

In the Feldman case the defendant argued that Feldman was no more a passenger than Burke who was injured at the same time. The court made a distinction between Burke and Feldman on the ground that Feldman was engaged in a continuous journey while Burke's journey so far as the carrier was concerned had ended.

The precise question presented here was determined in Virginia Ry. & Power Co. v. Dressler, 132 Va. 342, 111 S. E. 243 (1922), where the court held in effect that one who has alighted from a streetcar at a transfer point, and after passing along the street is crossing the street on which his car is to arrive and while doing so was injured by another car, does not at the time of the injury sustain the relation of passenger and carrier.

After an accurate analysis of the cases in Illinois and in other jurisdictions, that court in adverting to the Feldman case, said at page 248:

194

"Under the doctrine in this State and other States holding the same doctrine, each [Feldman and Burke] would have been entitled to recover, but the recovery would have been based upon the ground that they continued to be passengers until a reasonable opportunity had been afforded them to reach a place of safety. The grounds upon which the Supreme Court [of Illinois] rested its conclusion, and the fact that there were two dissenting judges in that court, and the majority holding was opposed by the decision of the Appellate Court, detracted greatly from the weight to be given to the case."

In the most recent case called to our attention involving the question of the termination of the relationship between a bus passenger and a carrier, the Supreme Court of North Carolina in Patterson v. Duke Power Co., 226 N. C. 22, 36 S.E.2d 713 (1946) held that ordinarily a passenger who has obtained a transfer and has safely alighted from one bus with the intent to transfer to another is not a passenger while traveling on the public street for the purpose of making the transfer so as to impose upon the carrier the duty to protect him against the hazards of the street. It would seem to us that the rule applicable to railroads where the carrier has complete control and management of the stations, platforms, and all the other facilities used in the transportation of. its passengers, including a considerable control over its passengers, should not be extended to apply to transportation companies serving municipalities where they receive and discharge passengers on public streets and sidewalks over which they have no control. Since the decision in Feldman v. Chicago Rys. Co., in 1919, in the City of Chicago there has been added to the older forms of transportation such as elevated railroad and electric streetcars, extensive bus lines and subways, and the entire transportation system is owned and operated by one corporation. Of necessity a transferring passenger in many cases

is compelled to walk a considerable distance on public streets, mingling with other pedestrians, in order to avail himself of another form of transportation in reaching his destination.

■ In the present case defendant's witnesses testified that plaintiff had alighted from the bus directly onto the public sidewalk and remained standing there for a short period of time after the doors of the bus were closed and before the traffic signal lights allowed the bus to proceed east on Montrose avenue.

We think the jury could find that under these circumstances the relationship of carrier and passenger ceased when the plaintiff reached a place of safety on the sidewalk.

■ We therefore hold that the instruction complained of was proper.

For the reasons given, the judgment is affirmed.

Judgment affirmed.

KILEY, P. J. and FEINBERG, J., specially concurring.

MR. PRESIDING JUSTICE KILEY specially concurring:

Neither in Feldman v. Chicago Rys. Co., 289 Ill. 25 (1919), nor in the Illinois cases it relied upon, had the passenger "fully alighted . . . and . . . reached a place of safety . . . ." In Chicago City Ry. Co. v. Carroll, 206 Ill. 318, plaintiff was injured when "alighting or just as he had alighted from a Wentworth Avenue street car intending to transfer to another car." In North Chicago St. R. Co. v. Kaspers, 186 Ill. 246, plaintiff intending to transfer ran alongside of a moving train, got on the step of a streetcar and was stepping up to the platform when increased speed of the train caused him to fall off the car. There was evidence also tending to prove that the conduct of defendant encouraged plaintiff. In Chicago & A. R. Co. v.

196

Winters, 175 Ill. 293, plaintiff while transferring from one train to another was told by operators of defendant's train to alight on a side where he would have to walk between trains moving in the opposite direction. "Just after" he alighted he was injured. In the Feldman case plaintiff alighted from a southbound streetcar and began to walk towards the southwest corner to transfer when he was injured five or six feet from the car.

The point urged by defendant here does not appear to have been raised by the defendant in the Feldman case. That point is that where a passenger has alighted and reached a place of safety, although he has a transfer, the defendant was required to exercise only ordinary care toward him.

A reading of the Winters, Kaspers, Carroll, and Feldman cases will show that in each case the injured party was in a dangerous place when alighting or attempting to alight or board or after alighting. Thus it appears that two elements were present in these instances, an intended transfer and a dangerous place.

Judges Cartwright and Dunn dissented in the Feldman case. (Their reliance was principally upon Chicago & E. I. R. Co. v. Jennings, 190 Ill. 478, opinion by Judge Cartwright.) They said that the relationship of carrier and passenger is tested by the question whether the person is under the care and control of the carrier so that it might exercise the degree of care exacted from it. They thought that Feldman, while walking on the street, was not under the carrier's control nor on any place provided for its passengers and that Feldman was exercising his right as one of the general public at the time he was injured. The dissent seems to distinguish the Winters and Kaspers case from the Feldman case on the ground that Winters was on the defendant's property, Kaspers on defendant's car. It distinguishes the Carroll case on the

197

ground that Carroll had "not got away in safety" from defendant's car.

The majority in the Feldman case thought it "clear from the decision" in the Carroll case that the doctrine there is, where a passenger, in pursuance of a continuous journey, transfers from one car to another, under the Feldman facts "the relation of carrier and passenger continues throughout the necessary acts of such transfer." That conclusion is consistent with the conclusion in the Winters, Kaspers, and Carroll cases. The language of the conclusion appears to be borrowed from a statement in the Carroll case to which the Kaspers case is cited, though that language does not appear in the Kaspers case. In any event the conclusion in the Feldman case incorporates implicitly the dangerous place element of the cases relied on and the dangerous circumstances surrounding Feldman's injury.

The conclusion in the Feldman case does not preclude a different rule, consistent also with the cases it relies on, that where a passenger has alighted and reached a place of safety he is no longer entitled to the highest degree of care on the carriers' part. This conclusion would be drawn in the face of the fact that a party had a transfer and was engaged in a continuous journey.

If the continuous journey, and not the safe place is to be the vital fact, one may wonder where this doctrine would lead to in metropolitan Chicago where the Chicago Transit Authority owns and operates streetcars, buses and rapid transit systems at street, subway and elevated levels.

Under the Feldman doctrine the current situation of the Chicago Transit Authority seems absurd. We take judicial notice of the Metropolitan Transit Authority Act, Ill. Rev. Stats. 1953, ch. 111⅔, §§ 301 et seq. [Jones Ill. Stats. Ann. 21.2064(1) et seq.], creating and empowering the Chicago Transit Authority to operate

198

the consolidated transportation facilities in the Chicago metropolitan area. We take notice too of the universal transfer system under which a person may take a continuous journey of many miles involving streetcars, buses, elevated trains and subway trains. During the journey in order to transfer a person may be required to cross streets and walk sidewalks with others some having transfers and some not.

During such a continuous journey under the Feldman language, the relationship of carrier and passenger exists imposing the duty of the highest degree of care on the Chicago Transit Authority. The hypothetical passenger while crossing Montrose avenue or Lincoln avenue is owed a higher degree of care than those walking beside him, but who have no transfers. This lack of a transfer was the distinction pointed out in the Feldman case between Feldman and Burke both of whom had gotten off the car and were in the same place when injured. The transfer therefore was the difference between the requirement of highest care toward Feldman and ordinary care toward Burke.

The dissent in the Feldman case stated that a man, though on a continuous journey, who had "safely alighted" was no longer under the care and control of the defendant. This statement supposed a finding of a place of safety; though, under the cases relied on by the majority, a finding that Feldman was in a place of danger would seem justified. But having "alighted safely" the dissent considered him not a passenger "but exercising his right as one of the general public by crossing the street."

I think the decision in the instant case is realistic and just.

MR. JUSTICE FEINBERG specially concurring:

I agree with the analysis of the cases in the majority opinion as well as the specially concurring opinion and

199

the illustration arising under the present system of transportation in Chicago, therein referred to. I believe, however, that there should be a sharper definition of the relationship of a carrier and passenger under circumstances like those in the instant case.

The relationship of carrier and passenger involves a contract of carriage. Such a contract, while the relationship exists, carries with it a duty of the carrier to exercise the highest degree of care consistent with the practical operation of its cars to protect the safety of the passenger. That duty begins when he is a passenger and remains with the carrier until the relationship is ended. The majority opinion says that "the relationship of carrier and passenger ceased when the plaintiff reached a place of safety on the sidewalk." I think a more accurate statement would be that the relationship of carrier and passenger continues where the passenger is given a transfer for continuous passage upon another conveyance of the carrier. However, when the carrier discharges the passenger at a public place of safety, being a place not owned or controlled by the carrier, the duty to exercise the highest degree of care is then suspended and is only resumed when he presents himself as a passenger within the time limits punched on the transfer, at the proper place of transfer.

Let us assume that the hypothetical passenger is discharged by the carrier safely upon the public sidewalk at State and Madison streets in Chicago, known generally as the busiest corner in the downtown area of the city, and he holds a transfer for a subway train operating under State street, but which requires him to cross the busiest intersection to reach the transfer point. It appears to me illogical and dangerous to extend the doctrine of the duty of the carrier to exercise the highest degree of care toward him, while he is choosing his own route across the intersection, mingling with the general public, and not identifiable as a

passenger by virtue of his transfer to any of the other drivers of defendant's streetcars or buses crossing that intersection.

I concur in the result reached in the majority opinion and the holding as to the correctness of the instruction relating to the degree of care due plaintiff at the time of the accident.